**In re John A. CAMPBELL, a/k/a Jack Campbell, d/b/a John Campbell Co., d/b/a John A. Campbell & Associates, Debtor.**

**Bankruptcy No. 90–3010–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 7, 1991.

John A. Campbell, Allison Park, Pa., and Dean A. Backeris, Pittsburgh, Pa., for debtor.

Stanley G. Makoroff, Trustee, Sable, Makoroff, Sherman & Gusky, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a rule to show cause why debtor's bankruptcy petition should not be dismissed for flagrant abuse of the Bankruptcy Code. After notice and hearing the court determines that the rule has not been answered and that debtor's bankruptcy petition must be dismissed for the reasons set forth below.

### I

### FACTS

On September 28, 1990, debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

Debtor listed liabilities totaling $73,446.75 on Schedules A-2 and A-3 of his petition. Of that amount, $38,197.42 was secured debt and the remaining $35,249.23 was unsecured debt.

Debtor also listed $270,944.93 in assets on Schedules B-1, B-2, and B-3 of his petition. Specifically, the following assets were listed:

| Description of Asset | Estimated Value |
| --- | --- |
| Personal Residence | $135,000.00 |
| Checking Account | 2,100.00 |
| Household Goods | 1,000.00 |
| Wearing Apparel | 2,000.00 |
| Venture Fund | 5,000.00 |
| Money Market Fund | 86,481.04 |
| Keogh Retirement Account | 39,363.89 |
| Total | $270,944.93 |

Except for wearing apparel and the Keogh retirement account, all of the above assets were jointly owned by debtor and his wife (who is not a debtor in this court) as tenants by the entirety.

Debtor contemplated that *none* of these assets would be available for distribution to his creditors. *All* of the above-listed assets were claimed as exempt pursuant to 11 U.S.C. § 522(b) on Schedule B-4 of the bankruptcy petition.

On his Schedule of Current Income and Expenditures, debtor lists income of $553.00 per month, all of which derives from investments debtor jointly owns with his wife. Debtor also lists current monthly expenditures of $3,515.00. Included in that amount is $707.00 in household expenses on a home that he recently purchased for cash in the amount of $135,000.00. He expends $661.00 for various types of insurance (including $201.00 for term life insurance) and $699.00 to lease, operate, and insure an obviously upscale automobile. Debtor favors certain creditors with a $200.00 per month payment on jointly owned debts and avers without credible substantiation that he expends $600.00 per month in medical expense with the explanation that "debtor is an insulin dependent diabetic". This sum is in addition to $371.00 spent on medical insurance. Finally, debtor expends $100.00 per month for recreation and $250.00 per month in payment of prepetition legal and accounting debts. In sum, during the pendency of this bankruptcy proceeding, debtor has determined to meet

his personal needs while ignoring those of his creditors.

A chapter 7 trustee was appointed on October 1, 1990. A § 341 meeting of creditors was held on November 14, 1990. Two (2) days later, on November 16, 1990, the trustee filed a report stating that no assets were available for distribution to creditors once debtor's claim to entitled exemptions was taken into account.

Debtor has assiduously endeavored to protect his claimed exemptions. On December 11, 1990, debtor filed a motion pursuant to 11 U.S.C. § 522(f)(1) to avoid five (5) judicial liens on the ground that said liens impair his claimed exemptions. A hearing was held on the matter on December 18, 1990; however, determination was deferred pending further review.

On January 16, 1991, a rule to show cause why this case should not be dismissed for flagrant abuse of the Bankruptcy Code was issued by the court *sua sponte*. After due notice, a hearing was held on the matter on February 19, 1991. Debtor testified at length at said hearing and was given the opportunity to present anything he deemed appropriate in responding to the rule.

## II

### ANALYSIS

The Bankruptcy Code at various sections provides for dismissal of a voluntary petition. Those instances of "cause" set forth at 11 U.S.C. § 707(a) and elsewhere which would justify dismissing a chapter 7 case are merely illustrative, not exhaustive. *See* H.R. No. 95–595, 95th Cong., 1st Sess. 380 (1977); *also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6336, 5880. A chapter 7 case may also be dismissed for other reasons which constitute "cause".

■ Good faith is an implicit jurisdictional prerequisite to the filing of a chapter 7 case. *In re Bingham*, 68 B.R. 933, 935 n. 2 (Bankr.M.D.Pa.1987) (citation omitted). Absence of good faith is sufficient cause for dismissal. *In re Khan*, 35 B.R. 718

(Bankr.W.D.Ky.), *remanded for clarification*, 751 F.2d 162 (6th Cir.1984).

Good faith is not defined anywhere in the Bankruptcy Code. At the very least, it requires a showing of honest intention. *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2nd Cir. 1983).

■ A determination as to the good faith *vel non* of a bankruptcy filing requires examination of all the facts and circumstances of a particular case. *In re Del Rio Development, Inc.*, 35 B.R. 127, 129 (9th Cir. BAP 1983). In particular, it requires inquiry into any possible abuses of the provisions, purposes, or spirit of bankruptcy law and into whether the debtor genuinely needs the liberal protections afforded by the Bankruptcy Code. *Setzer v. Hot Productions, Inc. (In re Setzer)*, 47 B.R. 340, 345 (Bankr.E.D.N.Y.1985).

■ The basic objective of bankruptcy law is two-fold: it is designed to achieve just and equitable distribution of assets to creditors and to relieve a debtor from the weight of oppressive indebtedness, thereby giving the debtor a "fresh start". *In re Epstein*, 39 B.R. 938, 941 (Bankr.D.N.M. 1984).

■ Debtor in this case does *not* require the protections afforded by the Bankruptcy Code in order for him to attain a "fresh start". *Through obvious clever planning, debtor has placed all* of his assets beyond the reach of his creditors under *non* bankruptcy law. There is no need for debtor to resort to the Code in order to accomplish this objective.

None of the debts listed by debtor in the schedules appended to his bankruptcy documentation is a debt also owed by his nondebtor wife. However, all $270,944.93 of debtor's assets *already* are beyond the reach of creditors having a claim only against him under *state* law. Assets valued at $229.581.04 are jointly owned by debtor and his nondebtor wife as tenants by the entirety. The remaining $41,363.89 in assets—i.e., wearing apparel valued at $2,000.00 and a Keogh retirement account valued at $39,363.89—although owned sole-

ly by debtor, are also exempt from attachment or execution on a judgment by virtue of 42 Pa.C.S.A. § 8124(a)(1) and (b)(1)(viii), respectively.

To permit this debtor to avail himself of the benefits of the Bankruptcy Code also would, in light of the special circumstances presented in this case, undermine the other purpose of the Bankruptcy Code enumerated above.

Debtor is enjoying what can only be described as a "comfortable" lifestyle even though he is in bankruptcy. As has been indicated, debtor has a $3,515.00 monthly budget, much of which provide luxuries as opposed to necessities. This court is convinced that a small percentage of belt-tightening would provide a substantial percentage of payment to creditors. Debtor has not offered such a plan and the court is prohibited from mandating same.

Not only is debtor enjoying a relatively opulent lifestyle hardly in keeping with what one would reasonably expect of a debtor who is truly deserving of the protections afforded by bankruptcy, it also appears that his prospects of finding gainful employment in the foreseeable future are not nearly as bleak as debtor would have one believe. According to debtor, he has little or no prospect of ever procuring gainful employment due to allegedly incapacitating clinical depression.

The claim that debtor suffers from incapacitating clinical depression was unsubstantiated. Moreover, the allegation that he is unable to concentrate as a result of depression was decisively refuted by debtor's demeanor and testimony as a witness. Debtor had no difficulty following complicated questions and exhibited a high level of intelligence and capacity to concentrate.

The reason why this debtor seeks to avail himself of the protections and benefits of the Bankruptcy Code is transparent. If debtor is successful, his creditors will be sent away empty-handed while he retains well in excess of a quarter of a million dollars in assets. Such a result surely was not contemplated by Congress and would be a patent abuse of the Bankruptcy Code.

Bankruptcy is not a refuge for the unscrupulous or cunning individual. *In re Brown,* 88 B.R. 280, 284 (Bankr.D.Hawaii 1988).

The solicitude of Congress ... stops at the debtor who does not measure up to that appealing image ("honest but unfortunate debtor") and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case *or has overutilized the privilege.* Riesenfeld, Creditors' Remedies and Debtors' Protection, 729 (3d ed. 1979). *Id.* (emphasis added).

As is apparent from the facts recited above, this debtor is by no stretch of the imagination "unfortunate". Moreover, although debtor perhaps is in technical compliance with the requirements of the Bankruptcy Code, he unquestionably is attempting to overutilize the protections afforded by bankruptcy to the unconscionable detriment of his creditors.

This debtor's bankruptcy petition makes a farce of the Bankruptcy Code. The only reasonable inference is that it was filed in bad faith and therefore must be dismissed for cause.

An appropriate Order will be issued.