**In re James W. HAMMONDS a/k/a Jack Hammonds d/b/a Warren Precision, SS # 106–34–7207 EIN 84–10938121, Debtor.**

**Bankruptcy No. 91–21321–SBB.**

United States Bankruptcy Court, D. Colorado.

April 23, 1992.

William A. Bianco, Madison E. Bond, Davis, Graham & Stubbs, Denver, Colo., for Tom H. Connolly, trustee for the Estate of Miniscribe Corp.

John D. Hindorff, Hopp & Associates, P.C., Longmont, Colo., for debtor.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon Tom Connolly's ("Creditor" herein) Motion to Dismiss filed September 13, 1991, Debtor's Response to Motion to Dismiss filed October 7, 1991, Creditor's Reply in Support of Motion to Dismiss filed De-

cember 16, 1991, and Debtor's late-filed [1] Response to Reply in Support of Motion to Dismiss filed March 5, 1992.

■ The principal issue before the Court, and one of first impression in this District, is whether the Debtor's Chapter 7 case should be dismissed for bad faith. The creditor seeks dismissal pursuant to 11 U.S.C. § 707(a).[2] The Court concludes, on Creditor's Motion, that the case must be dismissed on the grounds of bad faith under 11 U.S.C. § 707(a).

This Court, having reviewed the files [3] and being sufficiently advised in the premises, makes the following findings of fact and conclusions of law.

## I. FACTUAL BACKGROUND.

MiniScribe Corporation ("MiniScribe") filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on January 1, 1990 (Bankruptcy Case No. 90–B–00001–E). MiniScribe, acting as debtor and debtor-in-possession, filed a Complaint against James W. Hammonds ("Hammonds" or "Debtor") d/b/a Warren Precision (Adversary Proceeding No. 90–1198–

RJB) seeking to recover transfers of $42,-886.75 made to Hammonds which were alleged to be preferential transfers. 11 U.S.C. § 547. On December 24, 1990, judgment was entered in favor of MiniScribe and against Hammonds in the amount of $42,886.75 plus costs and interest. Execution proceedings against Hammonds were subsequently commenced and writs of garnishment against several entities were issued.

On April 4, 1991, Hammonds filed a Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code which stayed the execution proceedings. Since only a Petition had been filed, the Court issued a notice which set April 23, 1991 as the deadline to file the necessary statements and schedules. On April 29, 1991, six days after the established deadline, the Debtor filed his Chapter 13 Statement. The Chapter 13 Trustee filed a Motion to Dismiss the case on May 13, 1991 because no plan had yet been filed. The Chapter 13 Trustee scheduled a meeting with the Debtor for June 25, 1991 to resolve the deficient filing. Tom Connolly, the Trustee for the estate of MiniScribe,[4] filed a Motion to Dismiss the

**1.** This Court, by way of its February 11, 1992 Amended Order, advised the Debtor that certain materials outside of the pleadings and evidence in the nature of deposition testimony would be considered in the disposition of Connolly's Motion to Dismiss and announced that the matter would be treated on terms consonant with motions for summary judgment pursuant to Rule 7056, Fed.R.Bankr.P. and Local Rule 10(C). *See, In re Edmonds,* 924 F.2d 176 (10th Cir. 1991). Consequently, the Debtor was given until March 2, 1992 to respond.

**2.** Of some interest in this case is the circumstance that, but for the predominance of business debt, this Debtor's case might have been a promising candidate for dismissal for "substantial abuse," pursuant to 11 U.S.C. § 707(b). Dismissal for "substantial abuse" is not available for consideration due to the preponderance of business debt. *See, e.g., In re Walton,* 866 F.2d 981 (8th Cir.1989) (ability to pay, failure to fully disclose financial condition and indications that a debtor has not suffered any calamity, but merely desires to avoid paying debts constitute substantial abuse); *In re Kelly,* 841 F.2d 908 (9th Cir.1988) (where a debtor's monthly income surplus would allow him in Chapter 13 to pay off two-thirds of his unsecured debt in three years and all of it in five, case dismissed on substantial abuse); *In re Day,* 77 B.R. 225 (Bankr.

D.N.D.1987) (ability to pay 100% of unsecured debt, therefore case dismissed for substantial abuse); *Matter of Webb,* 75 B.R. 264 (Bankr. W.D.Mo.1986) (purpose of debtor rehabilitation is disserved if bankruptcy courts must be used in order to afford debtors basis for making their creditors pay for their luxuries); *In re Kress,* 57 B.R. 874 (Bankr.D.N.D.1985) (debtor had ability to pay back his unsecured creditors 100% in just over three years); *In re Bryant,* 47 B.R. 21 (Bankr.W.D.N.C.1984) (conscious disregard of bankruptcy provisions and bad faith efforts to avoid paying creditors amounted to substantial abuse). *See also, In re Gyurci,* 95 B.R. 639, 644 (Bankr.D.Minn.1989) (" 'I know it when I see it....' " (quoting Justice Stewart in *Jacobellis v. State of Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964))).

**3.** This Court, in addition to the files in the instant case, has reviewed the file in the Debtor's previously aborted Chapter 13 case, 91–14530–PAC.

**4.** The MiniScribe bankruptcy case was converted to a Chapter 7 proceeding on April 26, 1991 and Tom Connolly was appointed as interim trustee. Connolly filed a motion in the adversary to be substituted as plaintiff which was granted on July 22, 1992.

Chapter 13 case on May 16, 1991, asserting both bad faith and failure to file a Chapter 13 Plan and Plan Analysis as reasons for the dismissal. 11 U.S.C. § 1307(c). Connolly alleged that the Chapter 13 case was filed only to frustrate and stay MiniScribe's collection efforts.[5] In the absence of an effective response,[6] the Chapter 13 case was summarily dismissed on Connolly's motion on June 13, 1991 without an explicit recitation by the Court of the reasons therefor. The Court issued a Notice of Dismissal on July 3, 1991 and the file was closed on July 15, 1991.

The Debtor's Chapter 13 Statement stated that the Debtor had operated Warren Precision[7] as a "husband & wife" manufacturing business for four and one-half years, or since August, 1986. Priority debts of accrued wages payable and taxes to the Internal Revenue Service and the Colorado Department of Revenue were scheduled, as well as debts to three secured creditors, payments to none of which were in arrears. Only two unsecured creditors were scheduled—the MiniScribe judgment and a trade creditor, Swiss Lenox. The schedule of current income and expenditures showed a monthly income of $12,375.00 and itemized monthly expenses totalling $12,075.00, leaving $300.00 per month which would assumedly have been dedicated to payments under a future proposed Chapter 13 plan. The monthly expenses alleged for Debtor's family of three[8] included the following items:

| | |
|---|---|
| Utilities | $555.00 |
| Food | 550.00 |
| Clothing | 500.00 |
| Laundry/Cleaning | 75.00 |
| Medical/Drug | 650.00 |
| "Other" [non-automobile] Insurance | 560.00 |
| Transportation | $ 350.00 |
| Recreation | 250.00 |
| Payments for Support of Dependents[9] | |
| Not Living at Home | 300.00 |
| Charitable Contributions | 50.00 |
| Automobile Repair, Maintenance and Licenses | 250.00 |
| Home Maintenance | 200.00 |

The Debtor's scheduled assets included $45,000.00 in a joint checking account and $16,000.00 in cash.

Following the dismissal of the Chapter 13 case Connolly, again proceeding in his attempts to collect upon the MiniScribe judgment, filed a motion to have judgments entered against the garnishees and to have the garnished funds paid into the Court registry. A response was due from the Debtor on August 12, 1991 but was not filed until August 15, 1991. The very next day, on August 16, 1991, the Debtor filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code initiating the instant case. The Chapter 7 statement and schedules were also filed on August 16, 1991 and reveal the following:

A.  The Debtor is currently employed by an entity known as Precision Technology, Inc.;[10]

B.  The Debtor had terminated his employment with Warren Precision[11] which had continued from April 1987 through June 1991;

C.  The schedule of assets does not contain a reference to a specified bank balance and cash on hand is now only $500.00;

D.  The Debtor's prior bankruptcy is disclosed as case number 91–14520–

5.  The motion further stated that the Debtor's bankruptcy counsel previously offered to voluntarily dismiss the Chapter 13 case if Connolly would agree to settle the MiniScribe judgment for a lesser amount.

6.  The file does contain a Notice of Returned Document dated June 5, 1991, the date that objections were due.

7.  Warren Precision's address is listed as: 1035 Delaware Ave., # B, Longmont, Colorado.

8.  Although the budget says that there are *four* people in the household, only the Debtor, the Debtor's wife, and the Debtor's 20–year old daughter, Gina, are identified.

9.  The identity of the referenced "dependents" is/are not revealed.

10.  Precision Technology's address is listed as: 1035 Delaware Ave., # B, Longmont, Colorado. *Compare*, note 7, *infra*.

11.  Warren Precision's address is *now* listed as: 1121 Delaware # 4, Longmont, Colorado. *Compare*, note 7, *infra*.

PAC[12] which was allegedly dismissed because "debtor could not prepare confirmable plan";

E. The Debtor discloses that he sold contracts and contract liabilities on July 31, 1991, 16 days pre-Petition, to Precision Technology for "Consideration and its disposition: Sale";

F. Priority debts now include **only** increased amounts for taxes;

G. Secured debts are the same as listed in pleadings of prior bankruptcy;

H. The only listed unsecured creditor is now MiniScribe;[13]

I. The Debtor's current net income is now stated as $2,700.00 per month; and

J. The Debtor's current expenses total $4,265.00 and still include the following items:

| | |
|---|---|
| Utilities | $555.00 |
| Food | 550.00 |
| Clothing | 500.00 |
| Laundry/Cleaning | 75.00 |
| Medical/Drug | 650.00 |
| Transportation | 350.00 |
| Recreation | 250.00 |
| Charitable Contributions | 50.00 |
| Home Maintenance | 200.00 |

## II. ARGUMENTS.

In the instant Motion to Dismiss, Connolly asserts that the Chapter 7 case should be dismissed because (1) the Debtor is barred under 11 U.S.C. § 109(g) from filing another bankruptcy petition within 180 days of the dismissal of his last petition, and (2) this bankruptcy Petition was filed in bad faith and solely to frustrate the efforts of Debtor's sole unsecured creditor.

The Debtor responds (1) that he could not formulate a Chapter 13 Plan, thus the prior case was dismissed (since there is no express finding of "willful failure to abide with court orders" the present case should not be dismissed under Section 109(g).), and (2) that the present case was not filed in bad faith.

In his reply, Connolly points to the following as evidence of the Debtor's alleged bad faith filing:

A. The Debtor intends to retain his trade and personal debt and discharge **only** his tax liability and his debt to MiniScribe;

B. The Debtor has engaged in a sham transaction whereby the Debtor has transferred, without consideration, all of his business assets to Precision Technology, a new corporation owned solely by his wife;[14]

C. The Debtor privately assured at least one of his business creditors that it will be paid by the new corporation, and the new corporation has been discharging the prior trade debt;[15]

D. No other creditor, other than Connolly, the MiniScribe Trustee, was pressuring the Debtor at the time that the instant bankruptcy Petition was filed and it was Connolly's collection efforts that convinced the Debtor to file for bankruptcy protection; and

E. The Debtor is using the Bankruptcy Code to resolve his dispute with Connolly while continuing his business as usual.[16]

In response, the Debtor reasserts his position as stated before, but adds the specific arguments that (1) "the MiniScribe [judgment] just kind of put the icing on the cake" thus precipitating the original bank-

---

**12.** The case number *should* read 91–14530–PAC.

**13.** Debtor alleges that Swiss Lenox, an ordinary trade creditor, was paid in full in the ordinary course of business after the filing of the dismissed Chapter 13 case but prior to the filing of the instant case.

**14.** The Articles of Incorporation for Precision Technology, Inc. were filed with the Office of the Colorado Secretary of State on July 18, 1991. The registered agent for Precision Tech-

nology is Aleta Hammonds, the Debtor's wife. The Board of Directors is made up of Aleta Hammonds, John Hindorff, Debtor's bankruptcy counsel, and Maureen Reiff, an individual whose specific identity is undisclosed but whose address is identical to the office address of the Debtor's bankruptcy counsel, Mr. Hindorff.

**15.** *See*, note 13, *infra.*

**16.** *See*, note 5, *infra.*

ruptcy filing;[17] (2) he is merely a wage earner and although he has "sole management responsibility as to the direct manufacturing.... Aleta Hammonds [his non-debtor wife] '[o]versees all of the paperwork in the office, and whatever has to be done' ... she is his superior, supervisor, sets his salary and the employees report to her, in addition to himself";[18] (3) he received no monetary consideration for the transfer of assets, however, he did receive "a lot of relief"[19] and "retained the liability for any and all trade debts of Warren Precision due to any transfer that he may have made;[20] (4) the transfer was not a taxable event—"This in and of itself is 'consideration'";[21] and (5) the "mere assertion that Precision Technology, Inc. is paying trade debts on transferred leases does not relieve the debtor from any liability for such debts, it is merely the payment by a new company to continue the use of leased machinery that would certainly be surrendered in the event of no payment at all."[22]

## III. DISCUSSION.

### A. *11 U.S.C. § 109(g).*

█ Section 109(g) of the Bankruptcy Code provides, in part, as follows:

#### § 109. Who may be a debtor.

\*　　\*　　\*　　\*　　\*　　\*

(g) Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for **willful failure** of the debtor to abide by orders of the court, or **to appear before the court in proper prosecution of the case;**

\*　　\*　　\*　　\*　　\*　　\*

11 U.S.C. § 109(g) (emphasis added).

The Order entered June 13, 1991 which dismissed the Debtor's Chapter 13 case reads as follows *in its entirety:*

THIS MATTER having come before the Court upon the Motion to Dismiss this Chapter 13 Case filed by Creditor Tom H. Connolly, as Trustee of the bankruptcy estate of MiniScribe Corporation, proper notice being made and no objections sustained, the Court, being fully advised in the premises, does hereby

ORDER that this Chapter 13 case is hereby dismissed.

Based upon the record in the previous case, this Court is unable to find that Judge Clark dismissed the Debtor's Chapter 13 case *because of a willful failure to prosecute* his case. Although *both* Connolly and the Chapter 13 Trustee stated as reasons for their respective motions to dismiss the Debtor's failure to proffer a proposed Chapter 13 Plan and Plan Analysis, the dismissal Order is not expressly premised upon a finding of willfulness. Additionally, it appears that the Debtor attempted to respond to Connolly's motion but was precluded by an undisclosed procedural error. In sum, this Court cannot conclude that the Debtor's previous bankruptcy case was dismissed for "willful failure ... to appear before the Court in proper prosecution of the case." 11 U.S.C. § 109(g)(1).

### B. *11 U.S.C. § 707(a).*

The Bankruptcy Code provides for dismissal of a voluntary Chapter 7 case. Section 707(a) provides, in part, as follows:

The court may dismiss a case under this chapter only after notice and a hearing and only **for cause** including—

(1) unreasonable delay ... that is prejudicial to creditors;

(2) nonpayment of any fees ...; and

---

**17.** *See,* Response to Reply in Support of Motion to Dismiss at ¶ 4 (quoting pages 6–7 of the transcript of Debtor's 2004 exam testimony).

**18.** *See, id.* at ¶ 7 (quoting page 15 of the transcript of Debtor's 2004 examination testimony).

**19.** *See,* page 22 of the transcript of Debtor's 2004 examination testimony.

**20.** *See,* Response to Reply in Support of Motion to Dismiss at ¶ 8.

**21.** *See, id.* at ¶ 8.

**22.** *See, id.* at ¶ 8.

(3) failure ... to file ... the information required by paragraph (1) of section 521....

11 U.S.C. § 707(a) (emphasis added).

■ The instances of "cause" set forth in Section 707(a) are merely illustrative and are not an exhaustive listing. *See,* H.R. No. 95–595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978 pp. 5787, 5880, 6336. *Accord, In re Campbell,* 124 B.R. 462, 464 (Bankr.W.D.Pa.1991) ("A Chapter 7 case may also be dismissed for other reasons which constitute 'cause'.").

■ A debtor's good faith is an implicit jurisdictional prerequisite to the filing of a case under the Bankruptcy Code.[23] *See, e.g., In re Doss,* 133 B.R. 108, 109 (Bankr. N.D.Ohio 1991); *Campbell, supra* at 464; *In re Rognstad,* 121 B.R. 45, 49 (Bankr.D.Hawaii 1990). *But see, In re Latimer,* 82 B.R. 354, 363 (Bankr.E.D.Pa. 1988). Absence of good faith is generally held to be sufficient cause for dismissal. *See, e.g., Doss, supra* at 109; *In re Jones,* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990); *In re Ravick Corp.,* 106 B.R. 834, 842 (Bankr.D.N.J.1989).

■ Although not defined in the Bankruptcy Code, good faith, at the very least, requires a showing of honest intention. *In re Johnson,* 708 F.2d 865, 868 (2nd Cir. 1983); *In re Sky Group Int'l, Inc.,* 108 B.R. 86, 90 (Bankr.W.D.Pa.1989).[24]

The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. If, instead, a debtor seeks to discharge debts by shielding his wealth, "such an individual is not seeking a 'fresh start,' but is requesting the Court to permit him to continue living 'like a king.'" *In re Brown,* 88 B.R. 280, 285 (Bankr.D.Hawaii 1988).

■ "Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start." *Jones, supra* at 926. "Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors." *Id.* Even if a debtor is in technical compliance with the requirements of the Bankruptcy Code, if he is attempting to overutilize the protections afforded by the bankruptcy process to the *unconscionable* detriment of creditors, the case may be dismissed for cause. *Sky Group, supra* at 90.

■ Once the question of good faith/bad faith is put in issue, the party bringing the bankruptcy Petition has the burden of proving that the Petition was brought in good faith. *Id.* Put another way,

[a] determination as to the good faith vel non of a bankruptcy filing requires examination of all the facts and circumstances of a particular case. In particular, it requires inquiry into any possible abuses of the provisions, purposes, or spirit of bankruptcy law and into whether the debtor genuinely needs the liberal

---

**23.** The "good faith requirement also comports with the bankruptcy court's role as a court of equity, where those seeking relief must approach the court with clean hands and an honorable purpose." *In re Jones,* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990). (The Court's inherent authority to control its own docket is also cited.)

**24.** Attempting to quantify or formulate a test on the issue of bad faith, one bankruptcy court has stated:

Although no one factor predominates in the factual determination of a bad faith case, the elements often found in such cases include the following:

(a) frivolous purpose, absent any economic reality;

(b) lack of an honest and genuine desire to use the statutory process to effect a plan of reorganization;

(c) use of a bankruptcy as a device to further some sinister or unworthy purpose;

(d) abuse of the judicial process to delay creditors or escape the day of reckoning in another court;

(e) lack of real debt, creditors, assets in an ongoing business; [and]

(f) lack of reasonable probability of successful reorganization.

*In re Bingham,* 68 B.R. 933, 935 (Bankr. M.D.Pa.1987).

protections afforded by the Bankruptcy Code.

*Campbell, supra* at 464 (citation omitted).

■ Dismissal based upon lack of good faith must be undertaken on an *ad hoc* basis.

It should be confined carefully and is generally utilized only in those egregious cases that entail **concealed or misrepresented assets** and/or sources of income, and excessive and continued **expenditures, lavish lifestyle,** and **intention to avoid a large single debt based on conduct akin to fraud,** misconduct or gross negligence. It was not abuse of discretion to conclude that the factors found in this case amounted to a lack of good faith....

*In re Zick,* 931 F.2d 1124, 1129 (6th Cir.1991) (emphasis added).

■ Certain characteristics of a Chapter 7 case ripe for dismissal on grounds of bad faith are present in the instant case. Those characteristics include (1) one or few creditors in number; modest debt in amount relative to assets or income; (2) lack of candor and completeness in debtor's statements and schedules; (3) improper or unexplained transfers, or absence, of debtor's pre-petition assets; (4) multiple case filings or other extraordinary procedural gymnastics; and (5) existence of a predominant dispute between debtor and a single creditor.[25]

The Debtor *admits* that he transferred all or substantially all of his non-exempt assets to his wife on the eve of bankruptcy for no real consideration.[26] He continues to run the business as he did before, under a new name, but in the same location and with the same customers and suppliers as before. Indeed, the general trade creditors as well as the lessors of the business facility and equipment continue to be paid and payments to them have never become delinquent.[27] Debtor remains essentially the same businessman who is simply determined not to pay his principal creditor and is using the instant bankruptcy case as yet another device to delay. *See, In re Khan,* 35 B.R. 718, 719 (Bankr.W.D.Ky.1984).

While seeking the protection afforded by the Bankruptcy Code, Debtor has attempted to conceal his income from his creditors by claiming inflated expenses and adopting a not uncomfortable lifestyle which he wishes the MiniScribe Estate and the IRS to indirectly finance. The Debtor does not seek discharge of *any* personal obligations and continues to spend a relatively inordinate amount of money on personal expenses, while expending precious little, actually nothing, on the substantial MiniScribe debt.

This is certainly not a debtor who demonstrates his good faith by exercising a degree of good, old-fashioned "belt-tightening" to pay his creditors. Indeed, the Debtor's own schedules filed in the first case reflect that he had enough cash on hand and in a bank to pay at least a substantial portion of the MiniScribe judgment as well as his taxes *right then,* however, by the time of the filing of the second Petition, these funds had dwindled dramatically and inexplicably.

While some ability to repay debts is certainly not, in and of itself, adequate cause for dismissal of a Chapter 7 case,[28] except

---

**25.** In analyzing the instant case, this Court finds particular merit in what is commonly referred to as the "smell test." According to the late Irwin Younger, "the most important item in the courtroom and all too seldom used is the judge's nose. Any trial judge will inevitably come to the conclusion on occasion that a certain case or claim or defense has a bad odor. Simply put, a matter smells. Some smell so bad they stink." *Morgan Fiduciary, Ltd. v. Citizens & Southern Int'l Bank,* 95 B.R. 232, 234 (S.D.Fla. 1988) (paraphrasing Younger).

**26.** *See, In re Maide,* 103 B.R. 696, 698 (Bankr. W.D.Pa.1989) (the court found that a transfer made without consideration "indicates a lack of good faith and militates for dismissal.").

**27.** "Voluntary repayment is not forbidden by the Bankruptcy Code [citation omitted], but neither is the right to choose the recipients of such largesse unrestricted." *Maide, supra* at 700.

**28.** *Accord, In re Bridges,* 135 B.R. 36, 37 (Bankr. E.D.Ky.1991); *In re Frisch,* 76 B.R. 801, 803 (Bankr.D.Colo.1987) (Votolato, Visiting Judge); *In re Beck Rumbaugh Associates, Inc.,* 49 B.R.

perhaps under Section 707(b),[29] when considered in conjunction with (1) the transfer of non-exempt corporate assets, without fair consideration, to Debtor's non-debtor spouse, (2) a continuing comfortable lifestyle, (3) a deliberate and persistent pattern of evading a single major creditor, (4) less than candid, full disclosure, and (5) Debtor's prior procedural gymnastics in Bankruptcy Court, this Court must find that the Debtor lacks the requisite good faith and falls well short of the image of an "honest but unfortunate" debtor.[30] In short, the facts and circumstances of this case demonstrate conduct decidedly not in good faith.

The reason why this Debtor seeks to avail himself of the protections and benefits of the Bankruptcy Code is transparent. If he is successful, MiniScribe will be sent away empty-handed while the Debtor retains control of corporate assets and an ongoing business of an undisclosed value. "Such a result surely was not contemplated by Congress and would be a patent abuse of the Bankruptcy Code." *Campbell, supra* at 465. Such result is also beyond the countenance of this Court.

The instant Petition misapplies and discredits the Bankruptcy Code. The only reasonable inference that this Court can make is that it was filed in bad faith. This Court agrees with Judge Fitzgerald who, in a similar case, concluded, "[t]his Debtor who has acted in bad faith and is able to meet his obligations cannot use this court as an escape hatch simply because he has primarily business debts, the existence of which preclude a § 707(b) analysis." *In re Maide*, 103 B.R. 696, 700 (Bankr.W.D.Pa. 1989). This Court will not provide the Debtor safe harbor.

Accordingly, it is hereby

ORDERED that the Motion to Dismiss is GRANTED; and it is

FURTHER ORDERED that the within Petition is DISMISSED.

---

920, 922 (Bankr.E.D.Pa.1985). *See also,* H.R. No. 95–595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978) ("The section [§ 707(a) ] does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes *adequate* cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.") (emphasis added).

*Compare, e.g., In re Krohn*, 886 F.2d 123 (6th Cir.1989) (dealing with the "substantial abuse" standard in § 707(b)).

**29.** *See,* note 2, *infra.*

**30.** *See, Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).