**In re Mitchell Jeffrey TANENBAUM, SS # 058–38–1469, and Leah Christina Mann, SS # 453–02–0225, Debtors.**

**Bankruptcy No. 96–22908–SBB.**

United States Bankruptcy Court, D. Colorado.

June 26, 1997.

Harvey Sender, Katch, Sender & Wasserman, P.C., Denver, CO, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the United States Trustee's Motion to Dismiss Under 11 U.S.C. § 707 filed December 26, 1996 and Debtors' Response thereto filed January 10, 1997. The Court conducted an evidentiary hearing thereon on March 11, 1997 whereupon the matter was taken under advisement.

The issues presented to this Court are two-fold. First, can this Chapter 7 case be dismissed "for cause," pursuant to 11 U.S.C. § 707(a) because of the Debtors' alleged "bad faith" filing and substantial abuse of the bankruptcy system? This Court must analyze the facts of the within case in light of the Section 707(a) "bad faith" standard first addressed by this Court in *In re Hammonds,* 139 B.R. 535 (Bankr.D.Colo.1992).

Second, an issue raised for the first time at the hearing: was the United States Trustee's Motion to Dismiss Under 11 U.S.C. § 707[(a)], filed December 26, 1996, filed timely, pursuant to Rules 1017(e) and 4004(c), Fed.R.Bankr.P., or is dismissal barred because of an untimely-filed motion? [1]

These issues have proven to be particularly troublesome for some Bankruptcy Courts and, at least for this District, involve one important question of first impression. Moreover, this case illustrates perfectly the unintended—even objectionable—consequences of application of technical rules designed, presumably, for laudable goals.

Leo M. Weiss, Staff Attorney, Office of the United States Trustee, Denver, CO, for United States Trustee.

David M. Rich, Clanahan, Tanner, Downing and Knowlton, P.C., Denver, CO, for Debtors.

## SUMMARY OF DECISION

These Debtors might well be prime examples of debtors who have filed bankruptcy in bad faith. Under applicable case law, these Debtors would qualify as debtors who are substantially abusing the Bankruptcy Code.

---

1. Since this Court was not presented with this seminal argument prior to the time the hearing was convened, it was unable to adequately address this issue and chose, instead, to hear arguments and become advised on the merits of the pending Motion, in an effort to both conserve time and preserve the hearing date.

Nonetheless, they will escape dismissal of their case and receive a discharge of all their debt. They will also do so because of the Bankruptcy Rules and the anomalous, or unusual, provisions of the Rules which govern dismissal of cases under Sections 707(a) (dismissal "for cause") and 707(b) (dismissal for "substantial abuse") of the Code.

## · FINDINGS OF FACT

The Debtors filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on October 16, 1996. The Meeting of Creditors conducted pursuant to 11 U.S.C. § 341 was held on November 20, 1996. The last day to object to the discharge of the Debtors was January 20, 1997. No objections to the Debtors' discharge under Section 523 or Section 727 were filed and no extensions of time to object to the Debtors' discharge had been requested or granted. Rule 4004(b), Fed.R.Bankr.P. The Debtors have not yet, however, received their discharge as a result of the Clerk of the Bankruptcy Court's practice of refraining from issuing a discharge if a motion to dismiss under either subsection of 11 U.S.C. § 707 is pending.

A review of the Debtors' Chapter 7 Statements and Schedules reflects the following:

a. The Debtor–Husband holds a Masters degree in mechanical engineering. He was formerly a senior level staff employee at Texas Instruments. He currently, albeit intermittently, runs his own computer consulting business. Ms. Mann, the Debtor-wife, manages her own, part-time interior design consulting business. The Debtors' combined annual gross income currently exceeds $123,000;

b. The Debtors currently lease two 1995 model year Nissans, one minivan and one truck. Both leases were entered into in 1996;

c. The Debtors propose to retain a home valued at $210,000. The monthly expenses for mortgage and maintenance alone on that home are over $2,363;

d. The Debtors also propose to retain another piece of real property valued at approximately $219,900. (the "Evergreen Investment Property");

e. The Debtors have scheduled unsecured credit card debt totaling over $200,000 owed to 31 different credit card accounts/issuers; [2]

g. There was a failure to initially disclose the balances in bank accounts that the Debtors hold for their minor children or which were closed in 1996, prior to the filing of the Petition;

h. The Debtors apparently have significantly understated the value of their household goods, as demonstrated by an appraisal conducted at the request of the Trustee and upon the consent of the Debtors; and

i. Several of the Debtors' creditors are listed with incomplete information regarding, particularly, the dates upon which the debts were incurred.

The United States Trustee filed the instant Section 707 Motion on December 26, 1996. In the Motion, the United States Trustee admits that 11 U.S.C. § 707(b),[3] a dismissal for "substantial abuse" alone, is not applicable to the facts of the within case due to the presence of a significant debt attributable to the Debtor–Husband's business activities.[4] Although not specifically stated therein, the

---

**2.** Not a single one of the 31 credit card accounts/issuers participated in this case. Incredibly, not one pursued dismissal of the case under Section 707(a), or dischargeability litigation. This failure to act, or to protect their own interests, or to pursue those debtors who "abuse" the bankruptcy system—of which we hear so much, so frequently from the credit card industry—is, given their staunch views and the volume of their fault-finding, inexplicable.

**3.** Section 707(b) provides that a court "on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the Debtor."

**4.** This Court notes the irony, if not the outright inequity, of Section 707(b) wherein (1) a *consumer* debtor can be barred from a discharge of debt for "substantial abuse," but (2) a debtor with predominately *business* debt *cannot* be barred from a discharge of debt for "substantial abuse."

instant Motion must, therefore, be premised solely upon an application of 11 U.S.C. § 707(a).[5]

    f.  The Debtors' Schedule J (monthly expenses) reflect (1) that certain expenses have been listed twice (*i.e.*, pager expense), and (2) that certain expenses appear to be grossly excessive, namely, $350/month for electrical and propane (due to rural location of house), $350/month telephone expense (also due to location of house), $600/month for home maintenance, $1,000/month for food for a family of four (the Debtors have made the personal choice to eat "health foods"), $250/month for recreation, and $125/month for laundry and dry cleaning;

## DISCUSSION

### Issue 1: Bad Faith Filing/Substantial Abuse.

Considering the substantive merits of the Motion to Dismiss, this Court is not persuaded that the facts of this case are as dissimilar to the facts before this Court in *Hammonds* as counsel for the Debtors suggests. Rather, this Court finds them to be quite analogous.

■ As this Court concluded in *Hammonds*, the instances of "cause" set forth in Section 707(a) are not an exclusive listing. The absence of good faith of a debtor is also sufficient cause for dismissal under Section 707(a). *Hammonds, supra,* at 541. "The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. If instead, a debtor seeks to discharge debts by, in part, shielding his substantial income and wealth, 'such an individual is not seeking a "fresh start," but is requesting the Court to permit him to continue living "like a king."'" *Hammonds, supra,* at 541 (quoting *In re Brown,* 88 B.R. 280, 285 (Bankr.D.Hawai'i 1988)).

■ This Court also found that "[b]ankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expenses of their creditors." *Hammonds, supra,* at 541 (quoting *In re Jones,* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990)). Even if a debtor is in technical compliance with the requirements of the Bankruptcy Code, if he is attempting to inordinately utilize the protections, or excessively manipulate the advantages afforded by the bankruptcy process, to the distinct and glaring detriment of creditors, the case may be dismissed for cause. *Hammonds, supra,* at 541.

■ Once the question of good faith/bad faith has been put at issue, the debtor bears the burden of proving that the petition was brought in good faith. Certain characteristics of a Chapter 7 case for which dismissal on bad faith grounds is justified are present in the instant case. Those characteristics include a lack of candor and completeness, if not an outright misrepresentation of the value of assets, excessive and continued expenditures, and an unabated lavish lifestyle. *Hammonds, supra,* at 543 (cause for dismissal found when ability to repay debts is considered in conjunction with "(1) the transfer of non-exempt ... assets, without fair consideration, to Debtor's non-debtor spouse, (2) a continuing comfortable life-style, (3) a deliberate and persistent pattern of evading a single major creditor, (4) less than candid, full disclosure, and (5) Debtor's prior procedural gymnastics in Bankruptcy Court").

■ While it is not precisely clear what the Debtors' current income actually is, it is obvious that the Debtors have attempted to insulate that income from their creditors by claiming inflated expenses and adopting a comfortable lifestyle to be financed by the creditors. *See, also, In re Zick,* 931 F.2d 1124 (6th Cir.1991)(dismissing case under § 707(a) because of "(1) the debtor's manipu-

---

**5.**  As a final matter, this Court reserved ruling on the Debtors' request for Rule 9011 Fed. R.Bankr. P., sanctions against the United States Trustee until a time following a determination on the merits of the Motion itself. Based upon this Court's opinion herein, the request will be de-

nied. Indeed, this Court believes that the United States Trustee was legitimately and effectively trying to advance a "... good faith argument for an extension, modification or reversal of existing law...." Rule 9011, Fed.R.Bankr.P.

lations which reduced the creditors in this case to one; (2) the debtor's failure to make significant lifestyle adjustments or efforts to repay; (3) the fact that the petition was filed clearly in response to [the creditor's] obtaining a mediation award; and (4) the unfairness of the debtor's use of Chapter 7 under the facts in this case."); *In re Spagnolia*, 199 B.R. 362 (Bankr.W.D.Ky.1995). *But, see, In re Huckfeldt*, 39 F.3d 829 (8th Cir.1994)(concluding that a "narrow, cautious approach" should be adopted and holding that a § 707(a) analysis is better conducted under the "for cause" statutory standard and if a court elects to act under its inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a)).

This Court finds that, much like the debtor in *Zick*, the instant Debtors have "made no marginal, much less significant adjustments in [their] lifestyle, to make any fleeting or meaningful effort to repay" their debts. *Zick, supra,* at 1126, n. 1.

Where, as here, a debtor may not qualify for Chapter 13 relief, other remedies are still available to him, including "good, old-fashioned belt tightening." *In re Krohn,* 886 F.2d 123, 128 (6th Cir.1989)(§ 707(b) case).

The facts of this case exemplify a stereotypical case of debtors who live quite well, if not extravagantly, routinely buy the "best," casually and customarily use a myriad of credit cards to maintain that lifestyle, and then seek to discharge all of their accumulated debts while not undertaking any serious, meaningful, or effective efforts to reduce expenses, moderate their lifestyle or "tighten their belts." Moreover, these Debtors, who have, in this Court's opinion, acted in bad faith and are able to meet many of their obligations, should not be able to "use this court as an escape hatch simply because [they have] primarily business debts, the existence of which preclude a § 707(b) analysis." *In re Maide,* 103 B.R. 696, 700 (Bankr. W.D.Pa.1989).

There is no "cook book" analysis that can be implemented when evaluating a case pursuant to Section 707. "It really comes down to a sense of what is fair and just. And in this case, it is unfair and unjust for th[ese] Debtor[s] to have filed this case in bad faith." *Zick, supra,* at 1126, n.1.

Debtors in Chapter 7, in particular, who earn over $123,000 gross per year and who insist on continuing to live the "good life" with little or no sacrifice, are the symbols of a system gone awry. Use of the bankruptcy system by persons of extraordinarily high income and persons attended by all the accoutrements of wealth are an abuse to the privileges and opportunities afforded under the Bankruptcy Code.

### Issue 2: Timeliness of Motion.

In a Chapter 7 case, such as the case currently before this Court,

> on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e), the court **shall forthwith grant the discharge** unless:
>
> (a) the debtor is not an individual,
>
> (b) a complaint objecting to the discharge has been filed,
>
> (c) the debtor has filed a waiver under § 727(a)(10),
>
> (d) **a motion to dismiss the case pursuant to Rule 1017(e) is pending,**
>
> (e) **a motion to extend the time for filing a complaint objecting to discharge is pending,** or
>
> (f) the debtor has not paid in full the filing fee prescribed by 28 USC § 1930(a) and any other fee prescribed by the Judicial Conference of the United States under 28 USC § 1930(b) that is payable to the clerk upon the commencement of a case under the Code.
>
> Rule 4004(c), Fed.R.Bankr.P. (emphasis added).

The practice mandated by Rule 4004(c), Fed. R.Bankr.P., is the forthwith issuance of a discharge of debt, by the court, in the absence of certain specific circumstances.

The general policy underlying Rule 4004 "is to make finite the creditor's opportunity to object to the debtor's discharge so as to allow the bankruptcy court to enter the Chapter 7 discharge 'forthwith,' thereby fulfilling Congress' intent to provide the debtor

with finality and certainty in relief from financial distress." *In re Joseph,* 121 B.R. 679, 681 (Bankr.N.D.N.Y.1990).[6] "Rule 4004(c) provides a warning to creditors [and the trustee] that they must be diligent in examining their available legal options and that they must meet the exceptions outlined in the Rule to prevent the Court from granting the debtors' discharge forthwith." *Id.,* at 67–68.

■ It is undisputed that neither the United States Trustee nor another party filed an adversary proceeding objecting to discharge or a motion to extend the time for filing a complaint objecting to the Debtors' discharge.

No motion under Rule 1017, Fed.R.Bankr. P., which could, conceivably, extend the time to seek dismissal of a case under Section 707(a), has been filed, as well. Even if it had, still Rule 1017(e) refers only to the dismissal of an individual debtor's Chapter 7 case for substantial abuse pursuant to 11 U.S.C. § 707(b). Rule 1017(e) simply fails to address Section 707(a).

As none of the other enumerated exceptions apply herein, there does not appear to be anything preventing a discharge from entering, forthwith, in the within case.

The United States Trustee points out that the delay in the entry of the Debtors' discharge "is in accordance with [the] long-standing practice of this court to delay the entry of an order of discharge whenever a motion to dismiss under 11 U.S.C. Sec. 707(a) is filed prior to the expiration of the time to object to discharge." Contrary to the United States Trustee's position, this Court does not find this practice to be permissible under the auspice of Rule 4004(c)(2), Fed.R.Bankr.P. (**"on motion of the debtor,** the court may defer the entry of an order granting a discharge for 30 days and, on motion within that [period], the court may defer entry of the order to a date certain.") (emphasis added).[7]

Analogous to and instructive on this issue is the Tenth Circuit Court's decision in *In re Brayshaw,* 912 F.2d 1255 (10th Cir.1990). In holding that the clear, unequivocal time limits established by the Bankruptcy Rules are to be strictly construed, the Circuit Court set a standard that deviation from those time limits is seldom acceptable, even if the result appears to some, burdensome or harsh under the circumstances. "[T]hat is a matter for the drafters of the bankruptcy rules, who appear to have thought precise time limitations were important in the situation presented here." *Brayshaw, supra,* at 1257.[8]

6.  *Accord,* 9 *Collier on Bankruptcy,* ¶ 4004.04[1] (15th ed. revised 1996) ("This requirement is designed to bring about an expeditious discharge in chapter 7 cases and a prompt fresh start for the debtor, once there is no longer any possibility that a discharge will be denied or that the case will be dismissed for substantial abuse [707(b)], even if the administration of the estate will continue for some time. Since a discharge may be denied to an individual debtor who has not waived the discharge on a timely complaint under section 727 of the Code, or on a **timely motion** to dismiss the case under section 707 of the Code, the possibility of denial of discharge disappears as soon as the deadline for such a complaint or such a motion passes without it being filed.") (footnotes omitted) (emphasis added).

7.  The cases cited by the United States Trustee are simply not persuasive on this issue. Unlike the instant case, *In re Gaskins,* 85 B.R. 846 (Bankr. C.D.Cal.1988) and *In re Cronk,* 124 B.R. 759 (Bankr.N.D.Ill.1990) were cases brought solely pursuant to 11 U.S.C. § 707(b).

8.  *See, generally, In re Hill,* 811 F.2d 484, 487 (9th Cir.1987) ("This Circuit has stated that a party challenging a bankruptcy rule has a 'heavy burden' of showing that the rule deals with a matter of substance rather than procedure.... The application of virtually any procedural rule can result in the denial of a 'substantive' right, yet this does not transform the procedural rule into a substantive rule.... Of course, a procedural rule could be so harsh as to arbitrarily frustrate a substantive right ... The bankruptcy rules at issue here [Rules 4007(c) and 9006(b), Fed. R.Bankr.P.] have been promulgated by the Supreme Court and reviewed by Congress and are clear on their face. Though their effect may be to work a hardship on creditors in certain cases, they seek to further the prompt resolution of bankruptcies and do not unreasonably frustrate the exercise of the creditor's substantive right to enforce a prior judgment so as to offend 28 U.S.C. § 2075. The rules in the present case were simply not followed."); *In re E.B. Millar Coffee Co.,* 6 HR. 997 (D.Colo.1980) (discussing the difference between substantive rights and procedural rules).

In a case substantially similar to the facts before this Court, the court in *In re Adams,* 203 B.R. 240, 241 (Bankr.E.D.Va.1996) found that since "nothing in the code or the rules prevents a debtor from receiving a discharge when there is a pending motion to dismiss under § 707(a), the mere fact that the bank filed a motion to dismiss prior to debtors' discharge is not a basis to revoke the discharge if the court were later to dismiss the case" and denied the motion to dismiss as moot.[9] *See also, In re Budrow,* 194 B.R. 172, 175 (Bankr.W.D.Tenn.1996) ("The debtors demonstrated sufficient lack of good faith in the filing of their petition to have justified dismissal of their chapter 7 petition had such a motion been filed timely under 11 U.S.C. § 707(a)." The court then proceeded to deny the debtors' discharge under § 727.).

### CONCLUSION

This Court finds that the United States Trustee's Motion to Dismiss is time-barred and that the entry of the Debtors' discharge has been unnecessarily and improperly delayed.

Accordingly, it is

ORDERED that the United States Trustee's Motion to Dismiss Under 11 U.S.C. § 707 filed December 26, 1996 is DISMISSED as moot. And it is

FURTHER ORDERED that the Debtors' request for the imposition of sanctions pursuant to Rule 9011, Fed.R.Bankr.P., is DENIED. And it is

FURTHER ORDERED that the Clerk shall direct the entry of the order of discharge forthwith.

---

9. This Court does not find the intervening discharge in *Adams* to affect the application of its analysis to the within case. Moreover, this Court is not persuaded that the fact that the instant Motion was filed prior to the deadline for filing complaints objecting to the Debtors' discharge, while factually different that *Adams,* discounts the observations made by that court.