**In re William W. BUDROW and Celeste Leone Budrow, aka Celeste C. Leone, Debtors.**

**Mona Y. SAWYER, Plaintiff,**

**v.**

**William W. BUDROW and Celeste Leone Budrow, Defendants.**

**Bankruptcy No. 94–32974–B. Adv. No. 95–0316.**

United States Bankruptcy Court, W.D. Tennessee.

Feb. 23, 1996.

leging that a particular debt in the amount of $72,000 should be excepted from the debtors' discharge pursuant to § 523 and in the alternative that the debtors' general discharge should be denied pursuant to § 727. No particular subsections of the Bankruptcy Code were cited in the complaint. The debtors filed an answer that denied the allegations and demanded "strict proof." At the trial on February 15, 1996, the plaintiff orally amended her complaint to comply with the proof presented at trial and relied specifically upon § 523(a)(6) and §§ 727(a)(3), (a)(4), and (a)(5), as well as upon generalized complaints about the debtors' conduct.

At the trial both of the debtors appeared pro se. They had been represented previously by the Memphis, Tennessee, law firm of Arthur Ray, and in particular by David R. Huggins of that firm, but their attorney was permitted to withdraw by an Order entered October 20, 1995, after the attorney stated in his motion that the debtors "have failed to fully cooperate with counsel and have otherwise made it impossible for counsel to effectively assist Debtors." At a pretrial on this adversary proceeding and again at the time of trial the Court inquired whether the debtors intended to obtain new counsel, and the debtors advised the Court that they wished to represent themselves.

George F. Higgs, Stone, Higgs & Drexler, Memphis, TN, for plaintiff.

Edward L. Montedonico, Chapter 7 Trustee, Memphis, TN.

Ellen B. Vergos, United States Trustee, Memphis, TN.

David R. Huggins, Memphis, TN, for debtors.

## MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY AND OBJECTION TO DISCHARGE

WILLIAM H. BROWN, Bankruptcy Judge.

The plaintiff, Mona Y. Sawyer, filed an adversary proceeding on March 17, 1995, al-

The debtors filed their voluntary chapter 7 petition on December 19, 1994, and this adversary proceeding was initiated within the time allowed for filing such complaints. The debtors' petition was filed in this judicial District but there is no proof that the debtors had proper venue in this District. There were no motions to change the venue or to dismiss the case for improper venue until Ms. Sawyer filed such a motion on October 30, 1995. The Court denied that motion reciting FED.R.BANKR.P. 1014(a)(2), which requires a "timely motion of a party in interest." The Order denying the motion stated that the motion was untimely, that a prior adversary proceeding had been determined by a judgment of nondischargeability, that the granting of the motion would be prejudicial to creditors who had relied upon the venue, and

that Ms. Sawyer had initiated this adversary proceeding that was set for trial.

This memorandum opinion contains findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052. It will be unnecessary for the Court to decide the § 523(a)(6) issues because of the Court's determination that the debtors' general discharge must be denied on multiple § 727(a) grounds. The Court orally ruled at the conclusion of the trial that the debtors would be denied their general discharge, and this opinion incorporates that oral ruling.

The trial testimony came from both debtors, who were called as adverse witnesses by Mr. George F. Higgs, attorney for Mona Sawyer, and from the plaintiff. In addition to this testimony, there were trial exhibits introduced by the parties. In the defense phase, Mr. Budrow called his wife as a witness and he also testified as a defense witness. During the plaintiff's case and before the debtors testified as defense witnesses, the Court admonished the debtors of their Fifth Amendment privileges and of the Court's statutory obligation to report apparent violations of the criminal laws of the United States to the appropriate United States Attorney. 18 U.S.C. § 3057(a). Notwithstanding these warnings, the debtors succeeded in proving the plaintiff's case that they were not entitled to a general discharge.

The Court will not attempt to recount the specific testimony of the debtors. There is an audio tape of the testimony and a transcript may be ordered from the Clerk of the Bankruptcy Court. Local Bankruptcy Rule 5077-1. However, the Court will make the following findings of fact, which lead to conclusion of law under § 727(a).

The debtors signed their joint bankruptcy petition under penalty of perjury.[1] That petition and its schedules show no real estate and only minimal personal property ($1,500 in cash on hand, $1,000 in wearing apparel, and $1,000 in miscellaneous items of personal property). Schedule B lists an "Unknown" amount of accounts receivable, with no description of the source or nature of those receivables. The properties scheduled, including $1 of accounts receivable, are claimed as exempt under Mississippi state law. No secured creditors are shown in the original petition, although the petition was amended on April 5, 1995, to show Antone R. Leone as secured in accounts receivable for $350,000. The amount of the accounts receivable in Schedule B was never amended. The debtors' Statement of Financial Affairs showed no income in 1994, the prior year, or the year before that. It also stated that they had no income from employment or operation of business during the two years before their filing. Under question 14 of that Statement, the debtors stated that they held or controlled no property that was owned by another person. The Statement at question 16 lists Coffman's Lawn Sprinkler Service ("Coffman's") in Stamford, Connecticut, as a business in which the debtors had an interest, but no dates of operation of that business are given and no additional information is provided. However, in the schedules of personal or real property Coffman's is not mentioned. Question 17(c) of the statement replies "None" to the question concerning anyone in possession of the debtors' books and records. The debtors' Schedule I shows no current income and only $200 in current monthly expenses ($100 for food and $100 for clothing).

In the listing of creditors, the only unsecured creditors shown are Antone R. Leone, who is Celeste Budrow's deceased father; Mona Sawyer and her Connecticut attorney Mark Katz; William C. Beudreau, the debtors' adult son; and the Connecticut Workers' Compensation Commission. The petition was amended on January 31, 1995, to add Chase Manhattan Bank, which filed a separate adversary proceeding in which a consent order of nondischargeability has been entered.

■ The debtors' testimony established that they filed their chapter 7 petition because they had become angry with Ms. Sawyer and her Connecticut attorney for their

---

1. Celeste Budrow, in fact, signed at one place in open court after it was discovered that one signature line was blank and after she was advised that she was signing under penalty of perjury. She had signed the petition previously at other necessary places.

collection efforts on a judgment obtained by Ms. Sawyer in a Connecticut court. The collection efforts resulted in both of the debtors being jailed for contempt of that state court. Both debtors testified that they had access to funds at will, in sufficient amounts to satisfy Ms. Sawyer and their other creditors; however, they chose not to pay Ms. Sawyer because of her attorney's aggressive efforts against them. It is peculiar that the debtors listed family members in their petition as creditors, because their testimony was to the effect that they paid those they wished to pay and did not pay others as they so decided. Moreover, their testimony was that the family historically treated all of their individual funds as family funds that were available to these debtors whenever they asked. Specifically, Mr. Budrow said that his son was worth millions and that he could get whatever funds he wanted from his son. The debtors demonstrated sufficient lack of good faith in the filing of their petition to have justified dismissal of their chapter 7 petition had such a motion been filed timely under 11 U.S.C. § 707(a). It is too late for dismissal of the case now, in view of the proof that the debtors' discharge must be denied.

Mr. Budrow admitted that there were numerous creditors not listed in their petition because they were paying those creditors. Moreover, the debtors did not schedule the Internal Revenue Service ("I.R.S.") as a creditor because they did not consider I.R.S. to be a creditor. This determination was made years ago by the debtors who had not filed federal tax returns nor paid federal taxes in many years. Mr. Budrow stated that he had not filed tax returns in forty (40) years. Celeste Budrow testified: "I owe I.R.S. nothing and I report nothing." However, their testimony established that they had been assessed approximately twenty five (25) times, totalling over $15 million in taxes. Denying that they were tax protestors, Mr. Budrow stated that I.R.S. was not listed because he decided when he was twenty years old that he was not obligated under the federal tax laws. He admitted that he had operated several businesses and that he had not filed returns or paid taxes on those businesses. This included the debtors' failure to file returns or pay taxes on their business Coffman's Lawn Sprinkler Service.

The Code requires the debtors to file a list of all creditors, as well as schedules of assets and liabilities, current income and expenditures, and a statement of financial affairs. 11 U.S.C. § 521(1). The official bankruptcy petition and its schedule forms asks for a listing of all creditors, including disputed ones. The Court is aware that debtors sometimes innocently omit creditors; however, these debtors demonstrated a malicious motive to their filing, which was made to punish and frustrate Ms. Sawyer. These debtors intentionally omitted creditors that they chose to omit, because in Mr. Budrow's words, those omitted creditors "don't deserve this." They intentionally omitted the I.R.S., notwithstanding their knowledge that they had been assessed for a large amount of unpaid, albeit disputed, tax obligations. The facts of this case establish that these debtors knowingly omitted creditors; thus, their petition was willfully incomplete and they made false oaths when they signed their petition as being "true and correct." Under 11 U.S.C. § 727(a)(4)(A), this would be sufficient grounds to deny the debtors' discharge in this particular case. However, there is more.

Although the debtors did mention their business Coffman's Lawn Sprinkler Service in their Statement of Financial Affairs and did schedule an unknown amount of accounts receivable, presumably from that business, they made no effort to have the business or those receivables abandoned from the bankruptcy estate. Their amendment to their petition listing Mrs. Budrow's deceased father as the holder of a secured claim on the accounts receivable was not supported by any pleading on behalf of Mr. Leone to have the receivables valued or abandoned. There is no pleading in the case file to indicate that Mr. Leone or anyone on his behalf appeared in this case. No proof was offered to the Court of the existence of or validity of a security interest in the accounts receivable. Notwithstanding their chapter 7 filing, which has the effect of placing all of the debtors' assets into the bankruptcy estate, the debtors continued to oper-

ate Coffman's and to bill for and collect accounts receivable personally. The debtors had a duty to cooperate with the chapter 7 trustee and to surrender to the trustee all property of the estate along with all books and records. 11 U.S.C. § 521(3), (4). These debtors took it upon themselves to decide that unproven "family preservation trusts" owned the assets of Coffman's; however, the proof established that the debtors personally billed for its accounts and placed upon invoices that they should be paid to the order of "C. Leone." Trial Ex. 9. There is sufficient proof to find that the accounts receivable had significant value, as the debtors' compilation of Coffman's prominent customer list would indicate a large and ongoing business. Trial Ex. 8. Celeste Budrow testified that Coffman's customers were serviced twice a year. The debtors' practices continued after their filing the chapter 7 petition, without authorization from this Court and apparently without authorization from the chapter 7 trustee. The debtors' unauthorized control over and use of the assets of Coffman's, including its accounts receivable, constitutes a violation of § 727(a)(2)(B), and under the facts of this case would be sufficient grounds to deny the debtors' general discharge. *See Emmett Valley Assoc. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir.1992) (Fraudulent intent may be inferred from all of the circumstances.). However, there is more.

■ By the debtors' own repeated admissions, made with an arrogant defiance of their legal obligations, they have failed to keep any books and records of Coffman's or of any other business affairs. There was testimony that they operated an organic farm in Mississippi, and no books and records of that operation were turned over to the trustee. There is proof that they operated an antique business under the name "Silver Eagle" or "Sterling Eagle" Antiques. They had no records of this business, which may have been operated with their son. The debtors attempted to place the ownership of any business in some family member or family trust; however, they offered no proof of the existence of any trusts. The Court finds the debtors to lack any credibility as to the existence of valid trusts, and in the absence of independent proof of the existence and validity of any trusts, the Court finds no evidence to support such trusts. Assuming that a trust or trusts were valid, there is nevertheless proof that the debtors treated the income from Coffman's as their own. For example, copies of checks in payment of Coffman's accounts were introduced, which showed endorsement by Celeste Leone and deposit into personal accounts. Trial Ex. 10. In the face of their testimony that Coffman's had no assets, the plaintiff's attorney introduced a photograph, taken at the debtors' Connecticut home, of a truck with the Coffman's business name on it. Trial Ex. 5. Moreover, current yellow page advertisements were introduced and they showed Coffman's as Connecticut's oldest and largest such business. Trial Ex. 6 & 7. The business telephones are located in the debtors' Connecticut home. Mr. Budrow first said that he had not been employed for six years but his wife stated that he was the operator of Coffman's. He calls himself the "President" of Coffman's, which is in fact a sole proprietorship owned by Celeste Budrow. Trial Ex. 2. As to banking accounts, the debtors offered no record of accounts, denying that they had accounts at this time. Their business accounts had been held in other family members' names. The debtors testified that they operated solely by cash, in part with the intent of evading the I.R.S. For example, they paid Coffman's seven employees, six of whom were Portuguese who "come and go," in cash. They stated that they did not know how much that business made last year, but it was obvious that the business operated without authorization after the bankruptcy filing. It is also obvious that the debtors had income from that business prior to the bankruptcy filing, yet they showed no such income in their petition. There is overwhelming proof that the debtors willfully have "failed to keep or preserve any recorded information, including books, documents, records and papers," concerning their "financial condition or business transactions," and this alone would be sufficient to deny their discharge under § 727(a)(3). *See, e.g., Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir.1992) ("[W]hat constituted sufficient

record keeping varied with the facts of each case, but in all cases complete disclosure was required."). But, there is more.

The debtors testified that their homes were owned by the alleged family trusts, of which their adult son was the sole beneficiary but of which Celeste Budrow was the sole trustee. Again, no proof of the trusts was offered and the Court does not find the debtors' self serving testimony to be sufficient for establishment of a trust. Assuming the existence and validity of trusts, it was obvious that the debtors could invade the trusts at will and could obtain whatever funds they desired. For example, the debtors admitted that they had access to funds to pay their day to day expenses. They travel between Senatobia, Mississippi and Connecticut and California at will. They drive vehicles, eat, and buy necessities. Yet, they listed absolutely no income. Their thirteen room home and 165 acre farm on Highway 4, Senatobia, Mississippi has a value of $600,000, and they offered no proof of debt against it. Their seventeen room home at 375 Ocean Drive West, Stamford, Connecticut is presently on the market for $2.69 million and they offered no proof of debt against it. See Trial Ex. 3. They sometimes reside in property in California, which has commercial use value. Mr. Budrow said that they paid rent in no certain amount, just "whatever he can." No independent proof of that was offered and their bankruptcy petition shows no rent in their current expenses.

Based upon the total facts and circumstances, including the debtors' own testimony, the Court finds that the debtors have engaged in a scheme to hide their substantial income and assets behind alleged family trusts. It is inconsistent to the concept of such a trust to have the debtors exercise control over the trust funds and assets. As an example of this control, Mrs. Budrow has been the named insured on the Connecticut property, and she previously received two insurance checks for flood damage to that property. The debtors had control over the disposition of those insurance proceeds. They stated that the funds were used to partially repair flood damage; however, it is their control over the use of those funds that

is significant. The insurer apparently was led to believe that Celeste Budrow had an insurable interest in this property. The insurer may have been an agency of the United States government.

At no place in their bankruptcy petition did the debtors reveal their interests in their homes, the contents thereof, or the insurance proceeds therefrom. Assuming the validity and existence of the alleged family trusts, the debtors should have revealed their interests in those trusts and at least their beneficial interests in the assets of those trusts.

■ Also, there is the debtors' testimony that the Connecticut and Mississippi properties were titled formerly in the debtors' individual names and that they transferred those properties to the trusts. Assuming this did occur, there is a question as to whether such transfers would have been fraudulent, including whether the trusts gave adequate consideration for such transfers. On the present record, the Court can make no findings as to ownership of the homes other than that the debtors failed to disclose in their petition whatever interests they had in the three homes and their contents. *In re Yonikus,* 974 F.2d 901, 904 (7th Cir.1992) ("Debtors have an absolute duty to report whatever interests they hold in property."). Under the facts and circumstances of this case, this failure alone would be sufficient to find that the debtors gave false oaths on their petition in this regard, and this would constitute grounds to deny their discharge under § 727(a)(4)(A). *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir.1991) (The debtors' omissions must be deliberate and material.). But, there is more.

■ While the debtors offered some testimony on how they disposed of some antiques that they purchased from Ms. Sawyer and some testimony that they suffered a loss of personalty as a result of a flood at the Connecticut home, their proof only confirms that they did in fact possess some personalty rather than all of their personalty belonging to the alleged family trusts. Moreover, they did not explain adequately the "loss of assets or deficiency of assets to meet the debtors' liabilities" to their admitted creditor Mona Sawyer. This would constitute grounds to

**178**

deny their discharge under § 727(a)(5). *See, e.g., Bernstein v. Carl Zeiss, Inc. (In re Bernstein),* 78 B.R. 619, 624 (S.D.Fla.1987) (Rebuttable presumption of intent to conceal assets or defraud creditors arises when debtor's explanation is unbelievable.). However, there is more.

The facts in this case establish that the debtors acted with an intent to hinder, delay, and defraud their creditors, and in particular Mona Sawyer and the I.R.S., as well as the chapter 7 trustee, by concealing property of this estate. They did this before their bankruptcy was filed and they continued to do it after the bankruptcy was filed. These debtors thus violated § 727(a)(7) and this would be sufficient grounds to deny their discharge. But, there is still more.

The debtors' behavior in its totality of facts and circumstances establish that the debtors have engaged in a knowing scheme to conceal their true income and assets from their creditors. They have acknowledged that they have evaded their obligations to the federal government, and they have maintained an extravagant life style, flaunting their disregard for the tax and other regulatory laws of the federal government. They displayed an arrogance on the witness stand, defending their positions with family heritage and long-held personal beliefs that merely confirm that the debtors held themselves above the law. These debtors are neither honest nor unfortunate. *Local Loan Co. v. Hunt (In re Hunt),* 292 U.S. 234 at 244, 54 S.Ct. 695 at 699, 78 L.Ed. 1230 (1934). They are not deserving of the protection of the Bankruptcy Code nor are they entitled to its benefit of a discharge of their legal obligations.

For all of the reasons stated in this written opinion and in the Court's oral ruling on February 15, 1996, the Court finds and concludes that the debtors' general discharge will be denied. A separate order will be entered and that Order will address relief from the automatic stay as to creditors, including Mona Sawyer.