**In re Joe Henry BARNES and Rita Hilliard Barnes, Debtors.**

**Bankruptcy No. 93–23545–B.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Sept. 10, 1993.

Madalyn Scott, Memphis, TN, for U.S. Trustee.

Janet E. Land, Memphis, TN, for debtors.

## MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS UNDER 11 U.S.C. §§ 707(a) AND (b)

WILLIAM H. BROWN, Bankruptcy Judge.

The United States Trustee filed a motion to dismiss this voluntary Chapter 7 case pursuant to 11 U.S.C. § 707(b), and the United States Trustee subsequently amended its motion to allege cause for dismissal under § 707(a). The debtor responded with an objection to the motion to dismiss, and the motion was heard on August 24, 1993.

This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This opinion contains findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This case was filed on April 2, 1993, and the debtors' petition was identified by the debtor Joe Henry Barnes at the hearing, with the petition and its schedules becoming a part of the record of this hearing. In their petition, the debtors scheduled a residence located at Route 3, Ripley, Tennessee, with a market value of $80,000.00 and two mortgages totalling approximately $77,000.00. The debtors scheduled two 1993 vehicles, a Chevrolet truck and a Jeep Grand Cherokee with a total value of approximately $40,000.00 and with secured debt of approximately $46,000.00 against the vehicles. Other than these secured debts, the debtors scheduled unsecured debts of approximately $18,500.00, and most of their unsecured debt consisted of credit card purchases and two debts for construction or home improvement products.

In their original Schedules I and J, listing current income and expenditures, the debtors showed a joint gross income of $4,859.40 per month and a net take home pay of $2,974.45 a month, with monthly expenses of $2,255.00. In the United States Trustee's motion for dismissal under 11 U.S.C. § 707(b), the United States Trustee relied in part upon the $719.45 excess disposable income that the debtors would have to pay to their unsecured creditors, and the United States Trustee calculated that this disposable income could pay the total unsecured debt in approximately twenty-six months.

The debtors subsequently amended their Schedule J to show current expenses of $3,057.00 a month, which increase represented the addition of vehicle payments for the two 1993 vehicles, totalling $802.00 per month. It is the debtors' position that they originally inadvertently omitted the two vehicle payments and that their total expenses now exceeded their monthly income making them worthy of Chapter 7 relief.

The debtors amended their Schedules I and J again on August 23, 1993, to reflect current net income of $3,857.28 a month and monthly expenditures of $3,609.25. In this latest amendment, the debtors reflect that Mr. Barnes has received an increase of income as a result of his acquisition of a foreman status. The increased expenses reflect a small increase in utilities; a $45.00 increase in home maintenance; a $185.00 increase in food; a $40.00 increase for work uniforms; an $85.00 increase for medical expenses; a $10.00 increase in transportation costs; a $40.00 addition for recreation, publications, entertainment, et cetera; a $55.00 addition for charitable contributions; a $50.00 addition for home-owners insurance; a $105.00 addition for automobile insurance; and a $20.00 increase for real property taxes. Further, the payments on the 1993 Chevrolet were reduced approximately $100.00.

In Mr. Barnes' testimony he stated that the debtors had built a 3,000 square foot house on six acres, which was virtually completed in early 1993, shortly before their filing for Chapter 7 relief. He conceded that Farm Credit Services, the first mortgage holder, had recently appraised the property at $90,000.00, and that this appraisal was completed before the installation of a pool by the debtors. The debtors had listed the property at one point in their Chapter 7 petition at a value of $80,000.00, but on another schedule valued it at $110,000.00. In his testimony, Mr. Barnes stated that approximately $100,000.00 would be the current value. The debtor testified that he accumulated approximately $15,000.00 of unsecured debt when he built an outbuilding and pool at his new home. Further, the debtors purchased a new refrigerator, other appliances, new furniture, and construction materials, and the debtors accumulated unsecured debt in making those purchases. They had taken cash advances on some credit cards to make some of these purchases. In December, 1992, the debtors encumbered their home with a second mortgage for $15,000.00 and used this money to pay for the installation of a $12,000.00 swimming pool and to pay on the outbuilding construction

costs. In the fall of 1992, the debtors purchased a truck but then surrendered it to GMAC, and in December of 1992, they purchased a Jeep Cherokee for $25,000.00, trading a 1988 Cadillac. The debtors purchased an additional new truck in Mr. Barnes' name in early 1993 for their adult son, and after the son was laid off from his employment, the debtors continued to make the payments for that truck. Mr. Barnes conceded that he did not list the debt on the son's truck because he assumed that the son would pay for it, notwithstanding that the debt was in Mr. Joe Barnes' name.

Mr. Barnes admitted that one of the scheduled hearings on the United States Trustee's § 707(b) motion was rescheduled due to the debtors being on vacation. The debtor testified that this was their first vacation ever and that they spent $600.00 on the vacation from money that they had saved for vacation purposes.

Mr. Barnes testified that he and his wife did not have sufficient income to file and fund a Chapter 13 plan.

■ Section 707(b) of the Bankruptcy Code contains a provision for dismissal of a Chapter 7 case for "substantial abuse of the provisions of" Chapter 7. Such a dismissal may apply only to a case consisting of "primarily consumer debts." 11 U.S.C. § 707(b). And, of course, such a motion may be filed only by the United States Trustee or on the court's own motion. *Id.* In this instance, the United States Trustee's office filed and prosecuted the motion, and the court acted only as a finder of fact. The Court of Appeals for the Sixth Circuit has adopted a totality of circumstances test for application of § 707(b). *See In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Wilkes,* 114 B.R. 551 (Bankr.W.D.Tenn. 1989). In that totality of circumstances test, the court may consider "whether a debtor is needy," and that analysis includes a debtor's "ability to repay … debts out of future earnings." *In re Krohn,* 886 F.2d at 126. However, as this Court has earlier stated in its *Wilkes* opinion, § 707(b) dismissal is not required "merely because a particular debtor has disposable income

with which to fund a Chapter 13 plan or to otherwise pay creditors." *In re Wilkes,* 114 B.R. at 555. The *Krohn* and *Wilkes* totality of circumstances analysis may include the full range of circumstances represented by the facts in a given case.

■ Supplementing § 707(b) dismissals for substantial abuse, the Sixth Circuit in *In re Zick,* 931 F.2d 1124 (6th Cir.1991) recognized that a lack of good faith is implicitly cause for dismissal under § 707(a) of the Bankruptcy Code. As the *Zick* Court observed, "[t]he facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *In re Zick,* 931 F.2d at 1127 (quoting *In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa.1987)). Once again, *Zick* mandates examination of the totality of circumstances by a bankruptcy court in determining whether a Chapter 7 case should be dismissed for lack of the debtor's good faith in filing for Chapter 7 relief.

■ In the present case, the debtors were clearly put on notice of the United States Trustee's motion for dismissal under both § 707(b) and § 707(a), and one of the debtors, Mr. Barnes, was present, along with his attorney, for the hearing. This Court has concluded that the debtors misunderstand the purposes of Chapter 7 and that this case must be dismissed for both substantial abuse of the purposes for Chapter 7 and for the debtors' lack of good faith in filing for relief under that Chapter. Either section would be sufficient for dismissal; however, in this case the facts justify a finding by the Court of a violation of both Code provisions. As the debtor's testimony revealed, these debtors have made no attempt to alter their lifestyle in such a way as to permit them to repay their unsecured creditors. In fact, the debtors have done the reverse. Shortly before filing for Chapter 7 relief the debtors completed the construction of a $100,000.00 home in Lauderdale County, Tennessee. The debtors argued at the hearing that their home would probably not be worth that much because "who would want to live in Lauderdale County." Obviously the debtors wanted to live in Lauderdale County, and

the Court is aware that many other people live in Lauderdale County by choice. Obviously their new home has significant value. The question of exactly how much the new home is worth is not really the point, however. Rather, the key inquiry of concern to the Court is why the debtors would choose to selectively pay some unsecured creditors as they borrowed money to complete their new home and yet incur new unsecured debt in that construction process, which they chose not to pay. The debtors' lack of good faith is evidenced by their encumbrance of their home with a second mortgage for the purpose of building a swimming pool. The debtors did not attempt to explain any medical reason for building such a pool. Rather, Mr. Barnes testified that he was under pressure to build a pool because his family wanted one. Also, there was no testimony that the debtors made any effort to consider selling their new home or that they considered making any other adjustments in their lifestyle so that unsecured creditors could be paid.

As additional evidence of their lack of concern for unsecured creditors, the debtors purchased three new vehicles shortly before filing a Chapter 7 petition, one of those vehicles being for their adult son. The debtors made no effort to surrender the son's vehicle after the son lost his employment and was unable to pay for the new truck. Rather, the debtors continued to make the payments for their son's new truck, which payments obviously limited the debtors' ability to repay their own unsecured creditors. Mr. Barnes attempted to justify buying one new vehicle, stating that he needed a four wheel drive vehicle and that the payments for that vehicle were only slightly more than the payments on the 1988 Cadillac that he traded in. However, the debtors had given no consideration to trading down to a less expensive vehicle, and there was no proof that the debtors actually needed an expensive four-wheel drive vehicle.

When the debtors encumbered their property with a $15,000.00 second mortgage, they could have at that point paid virtually all of their unsecured creditors

with those funds. Instead, they chose to enhance their lifestyle at the expense of unsecured creditors by installing a pool and completing an outbuilding. There was no showing of a justifiable detrimental change in the debtors' circumstances before filing for Chapter 7 relief. The only detrimental change was of their own choosing by incurring new secured and unsecured debt to enhance their lifestyle.

As to the debtors taking a vacation, the Court certainly does not quarrel with debtors having a vacation. However, their ability to save for a vacation evidences an ability to accumulate funds for their own purposes while choosing not to save for repayment of unsecured debt. Moreover, the debtors' amendments of their schedule of expenditures indicate that as the debtors attempted to prepare for this motion to dismiss they thought of new expenses to add, including charitable contributions, that did not appear on their first expense schedule.

As further evidence of the debtors' lack of good faith, Mr. Barnes at the hearing attempted to persuade the Court that his increase in income was not really something that he wanted. He testified that he was forced to accept an increase in income because his work group had reached such a number as to require a foreman under union rules. The Court has never before had a debtor who did not want an increase in income, and this debtor did not testify that the increase was only temporary or that he would suffer a reduction in work in the near future.

In substance, the Court is persuaded from all of the facts before it that these debtors have chosen to pay only those creditors that would enable them to maintain a lifestyle of their choosing. At the same time, the debtors have made no lifestyle adjustments or efforts to repay their other unsecured creditors. The Court is left with the conviction that the facts of this case would cause the public to perceive Chapter 7 bankruptcy as an easy way out of unnecessary consumer debt. These debtors incurred unsecured debt to perpetuate their chosen lifestyle, which the Court is not finding to be extravagant but which is at least quite comfortable. It would be unfair, under the facts presented to this Court, for these debtors to use Chapter 7 for relief, and it would be a substantial abuse of Chapter 7 to allow these debtors to remain in Chapter 7.

### CONCLUSION

From the facts presented to it, the Court finds and concludes that the United States Trustee has carried its burden under 11 U.S.C. § 707(b) to rebut the presumption in favor of Chapter 7 relief for the debtors, and this case is dismissed as being a substantial abuse of Chapter 7 relief. Moreover, this Chapter 7 case is dismissed for the debtors' lack of good faith in filing for Chapter 7 relief. This dismissal is without prejudice to the debtors refiling for or immediately converting to Chapter 13 relief, if they so choose. However, there was nothing shown to the Court to indicate that these debtors would not be able to repay their unsecured creditors outside of bankruptcy if they made appropriate adjustments in their budget and lifestyle for the short term required for such repayment.

An attorney for the United States Trustee has prepared a separate order.

**SO ORDERED.**