In re Thomas **SPAGNOLIA, M.D., D'Arcy Honeycutt, M.D., Debtors.**

Bankruptcy No. 95–50083(2)7.

United States Bankruptcy Court,
W.D. Kentucky.

Sept. 5, 1995.

Mark C. Whitlow, Paducah, KY, for Debtors.

Alan C. Stout, Trustee, Marion, KY.

Scott J. Goldberg, Assistant United States Trustee, Louisville, KY.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Chief Judge.

This matter is presently before this Court on the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. Section 707(a). Having considered the testimony of the debtors at the June 22, 1995 hearing, as well as the briefs and argument of counsel this Court sustains the U.S. Trustee's Motion to Dismiss for the reasons set forth below.

### FACTS

The Debtors in this case, who are husband and wife, are both physicians. Dr. Thomas Spagnolia is a neurosurgeon and Dr. D'Arcy Honeycutt is a plastic surgeon. They jointly filed for protection under Chapter 7 of the Bankruptcy Code on February 16, 1995. The Debtors have conceded that their main motivations for filing for bankruptcy are: (1) a $300,000.00 default judgment entered against them by the Texas State Court in favor of Wayne Boyd, who was injured as a result of an incident involving one of the Debtors' dogs, and Joan Stahl, Boyd's wife, who obtained a judgment for loss of consortium; and (2) an unliquidated claim of Greg Coleman, who also sustained injuries as a result of a separate incident involving the Debtors' dogs. Mr. Boyd has filed an adversary proceeding requesting his judgment be rendered nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and Mr. Coleman has filed an adversary proceeding seeking $500,000.00 in damages.

The Texas judgment involved an incident which occurred in early May 1992. The Debtors owned two large dogs: a Golden Lab and a Tibetan Mastiff. On the particular day in question, Debtors' two dogs were roaming unattended beyond the parameter of the Debtors' property. Apparently, one of the dogs barked in a vicious manner at Wayne Boyd, a neighbor. During Boyd's encounter with the dog, he fell, injuring his knee. At the time of this incident, only Debtor Honeycutt was a resident of Galveston, Texas. Dr. Spagnolia had moved to Baltimore, Maryland, in July 1990 to further his medical training. Approximately six weeks after the incident, Dr. Honeycutt moved to Lexington, Kentucky. The Debtors testified that they never received notice of the Texas lawsuit and neither were aware of the Default Judgment until the Fall of 1994, when the Texas Plaintiffs sought to domesticate their judgment in Kentucky.

The second claim involving the Debtors' dogs involves an incident that occurred on August 30, 1994, after the Debtors moved to

Paducah, Kentucky. In his Complaint, Greg Coleman claims that while serving as a United Parcel Service employee, he was attacked by the Debtors' dogs on their property as he attempted to deliver a package. He seeks damages of $500,000.00. Immediately following the dog attack on Coleman, the Debtors took the two dogs to the veterinarian and had them put to sleep.

It is clear from the Debtors' financial picture that the claims of Boyd and Stahl, which have already been reduced to a judgment, could be paid if the Debtors were so willing. Likewise, it is apparent that the Debtors are capable of being financially responsible for Coleman's claim, if and when it is ever reduced to a judgment. Dr. Spagnolia has an excellent income as a neurosurgeon, generating a net monthly income of approximately $12,400.00. Dr. Honeycutt has recently started her practice in Paducah, Kentucky and while she experienced a slow start during the first six months of her practice, her net monthly income for February, March and April of 1995 was $6,000.00, $5,000.00 and $4,000.00, respectively. This Court finds these amounts to be indicative of what Dr. Honeycutt can expect to make in her practice. Thus, the Debtors' combined monthly income is approximately $17,000.00.

Schedule J, along with Dr. Honeycutt's testimony at the June 22, 1995 hearing, reveals that the Debtors' lifestyle could be described as "extravagant" or "lavish," or, at the very least, it is indeed a *very comfortable* lifestyle. Among other expenses, the Debtors spend $800.00 per month on food for their family of three plus their nanny, an amount which Dr. Honeycutt conceded includes frequent meals out; $200.00 per month for clothing; $200.00 per month for laundry and dry cleaning; $200.00 per month for recreation, which includes going to movies, renting video tapes, and going to Chuck E. Cheese; $250.00 per month for charitable contributions, including donations to the Debtors' alma maters and various research foundations; $1,200.00 per month for a life insurance policy; and $1,460.00 for a full-time nanny and two preschools for their one child. Schedule J indicates total monthly expenses of $11,123.00. These expenses are indicative of an extremely comfortable lifestyle. Few Chapter 7 Debtors are able to dine out frequently, routinely have their clothes laundered by others, support their alma maters, purchase large life insurance policies and send their one child to two separate private pre-schools, while at the same time retaining a full-time nanny. The Debtors conceded at the June hearing that they had made no lifestyle adjustments or efforts to reduce their expenses. Dr. Honeycutt did, nevertheless, admit that there were several areas of their budget that could be tightened, thus allowing them to manage on significantly less.

Despite the Debtors' rather hefty monthly expenses of $11,123.00, they are still left with a disposable monthly income of nearly $6,000 as a result of their extraordinarily high joint monthly net income of approximately $17,000.00.

## CONCLUSIONS OF LAW

■ The U.S. Trustee has moved this Court to dismiss this case pursuant to 11 U.S.C. § 707(a). That Section of the Bankruptcy Code provides:

(a) The Court may dismiss a case under this chapter only after notice and a hearing and only *for cause,* including-

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commending such case, the information required by paragraph (1) of section 521, but only on a motion of the United States Trustee.

11 U.S.C. § 707(a). Subsection (1), (2) and (3) are not an exclusive list of causes supporting dismissal under § 707(a). *In re Zick,* 931 F.2d 1124, 1126–27 (6th Cir.1991); *In re Hammonds,* 139 B.R. 535, 541 (Bankr. D.Colo.1992). The Court may exercise its discretion and dismiss a case on other

grounds when "cause" is determined to exist. *In re Zick*, 931 F.2d at 1127.

Numerous courts throughout the United States have held that a debtor's "lack of good faith" in filing a bankruptcy action is implicitly cause for dismissal under § 707(a). *In re Zick*, 931 F.2d at 1124; *In re Barnes*, 158 B.R. 105 (Bankr.W.D.Tenn.1993); *In re Hammonds*, 139 B.R. at 535; *In re Johnson*, 137 B.R. 22 (Bankr.E.D.Ky.1991); *In re Jones*, 114 B.R. 917 (Bankr.N.D.Ohio 1990); *In re Khan*, 35 B.R. 718 (Bankr.W.D.Ky. 1984). In determining whether a case should be dismissed under § 707(a) for lack of good faith, the cases mandate an examination of the totality of the circumstances. *In re Zick*, 931 F.2d at 1127; *In re Barnes*, 158 B.R. at 108. Over the years, Courts considering this issue have developed a set of factors that courts are directed to consider in deciding whether a § 707(a) dismissal for lack of good faith is warranted. These include:

1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.

3. The debtor filed the case in response to a judgment pending litigation, or collection action; there is an intent to avoid a large single debt.

4. The debtor made no effort to repay his debts.

5. The unfairness of the use of Chapter 7.

6. The debtor has sufficient resources to pay his debts.

7. The debtor is paying debts to insiders.

8. The schedules inflate expenses to disguise financial well-being.

9. The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.

12. The debtor failed to make candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural "gymnastics."

*See In re Zick*, 931 F.2d at 1124; *In re Brown*, 88 B.R. 280, 283–84 (Bankr.D.Hawaii 1988); *In re Barnes*, 158 B.R. at 105; *In re Hammonds*, 139 B.R. at 535; *In re Cappuccetti*, 172 B.R. 37 (Bankr.E.D.Ark.1994). Generally, the presence of only one of these factors is not sufficient to support a § 707(a) dismissal. *Cappuccetti*, 172 B.R. at 39; *In re Keebler*, 106 B.R. 662 (Bankr.D.Hawaii 1989). However, where a combination of these factors are present, the courts have held that a § 707(a) dismissal is warranted. *In re Zick*, 931 F.2d at 1124 (Court dismissed bankruptcy case under § 707(a) where (1) debtor's manipulations reduced his creditors to one; (2) debtor failed to make significant lifestyle changes or to repay debt; (3) debtor filed for bankruptcy in response to creditor obtaining a mediation award; and (4) Court found debtor's use of Chapter 7 was unfair to avoid the consequences of violating a noncompetition agreement). *In re Brown*, 88 B.R. at 280 (Bankruptcy case dismissed under § 707(a) where (1) there was a single creditor; (2) debtor was capable of earning sufficient income to pay his debts; (3) debtor failed to adjust his lifestyle; and (4) debtor's use of the Bankruptcy Code was unfair); *In re Cappuccetti*, 172 B.R. at 39.

In applying the factors set forth above to the instant case, it is evident to this Court that factors numbered 2, 3, 4, 5, 6, 10, 11 and 13 are present.

With regard to factor 2, the Debtors have admitted that they have made few, if any, lifestyle adjustments or efforts to reduce expenses. The Debtors have continued to dine out on a frequent basis, have their clothing laundered by others, engage in frequent recreational activities such as going to Chuck E. Cheese and going to movies, have continued to support their alma maters, and finally spend $1,400.00 per month to send their one child to two separate preschools, while at the same time retaining a full-time nanny. Debtors have listed their monthly expenses as totally $11,123.00. This Court finds that

amount to be extraordinarily and unnecessarily high for a family of three. Moreover, Dr. Honeycutt conceded at the June hearing that there were several areas of their budget that could be tightened. They simply have not taken such steps.

It is also apparent that factors 3, 4 and 11 are present in this case. The Debtors concede at page 4 of their Response that this bankruptcy was filed in response to the Texas judgment entered against them and the unliquidated claim of Greg Coleman:

> The main motivation for the debtors' bankruptcy is the $260,000.00 (plus $40,000.00 in. interest) default judgment entered against them in a Texas court and an unliquidated claim from Mr. Greg Coleman who was injured by the debtors' dog.

Thus, it is clear that the Debtors filed this bankruptcy action first and foremost to avoid paying the Texas judgment, and secondarily to avoid paying any judgment that may be entered ultimately entered against them on behalf of Mr. Coleman.

■ This Court furthermore finds the presence of factors 5, 6 and 13. It would be patently unfair and unconscionable to allow these Debtors to use a Chapter 7 proceeding to discharge legitimate obligations incurred as a result of their dogs, for whose conduct they are unquestionably responsible, when they have sufficient income to repay the debts. Drs. Spagnolia and Honeycutt have a joint net monthly income of approximately $17,000.00, and a disposable income of nearly $6,000.00 when their expenses are subtracted. They cannot be described as being in financial need. Congress simply did not intend to provide bankruptcy protection to the *"non-needy debtor." In re Zick*, 931 F.2d at 1128. Rather, the Bankruptcy process is intended to provide relief "to the poor but honest debtor who has tried his best to pay his creditors but failed." *In re Studdard*, 159 B.R. 852, 857 (Bankr.S.D.Ark.1993); *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill. 1986); *In re Keebler*, 106 B.R. at 664. The Courts have repeatedly held that a debtor's resort to bankruptcy when he or she has the *ability* to pay his or her creditors is unfair and is an indicia that good faith is lacking. *In re Zick*, 931 F.2d at 1127, f.n. 3 ("When a

debtor capable of at least partial repayment has made every effort to avoid payment of an obligation ... lack of good faith sufficient to justify dismissal may be found."); 4 *Collier on Bankruptcy*, paragraph 707.03 (15th ed. 1989); *See also In re Studdard*, 159 B.R. at 856.

The Bankruptcy Court in Hawaii, in deciding to dismiss a Chapter 7 case pursuant to § 707(a), stated:

> Although the post-petition ability to repay debts, standing alone, may not be cause to dismiss a petition under 11 U.S.C. § 707(a), it is a relevant inquiry into whether the petition was filed in good faith.
>
> Debtor is in good health, capable of earning substantial income. By readjusting his lifestyle, he is able to pay [sic] portion of his debts. Instead, he chooses to remain the same individual living an affluent lifestyle and determined not to pay his principal creditors. It is clear that the debtor simply desires not to pay his debts.

*In re Keebler*, 106 B.R. at 664–65.

Likewise, the *Barnes* court also found that it would be unfair for the debtors in that action "to use Chapter 7 for relief, and it would be a substantial abuse of Chapter 7 to allow these debtors to remain in Chapter 7," where the debtors made no efforts to repay certain unsecured creditors while perpetuating a lifestyle which, though not extravagant, could be described as quite comfortable. 158 B.R. at 109; *accord In re Hammonds*, 139 B.R. at 541 (Bankruptcy protection was not intended to assist those who "are attempting to preserve a comfortable standard of living at the expense of their creditors.").

Accordingly, for these same reasons it would be unfair to allow Drs. Spagnolia and Honeycutt to avail themselves of the protection afforded by Chapter 7 of the Bankruptcy Code. Consequently, dismissal of their Chapter 7 bankruptcy action is warranted under § 707(a).

## CONCLUSION

For the above-stated reasons, this Court by separate Order sustains the Motion of the

United States Trustee to Dismiss Pursuant to 11 U.S.C. § 707(a).