**In re Carol S. EMGE, Debtor.**

**Bankruptcy No. 96–34523(1)7.**

United States Bankruptcy Court,
W.D. Kentucky.
Louisville Division.

July 21, 1998.

Neil Charles Bordy, Louisville, KY, for Debtor.

William W. Lawrence, Louisville, KY, Trustee.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is before the Court on the Motion of Creditors, Donna Fryman and Pi-zazz Enterprises, Inc. ("Creditors"), to Dismiss the Debtor's pending Chapter 7 Bankruptcy case pursuant to 11 U.S.C. § 707(a). Having considered the testimony of the parties at both the May 11, 1998 hearing and the October 30, 1997 hearing, as well as the briefs and arguments of counsel, the Court finds for the reasons set forth below that the Debtor has demonstrated a lack of good faith in both seeking the protection of the Bankruptcy Code and in converting her previous Chapter 13 Petition to the current one under Chapter 7, rather than making the required lifestyle adjustments necessary to have a confirmable Chapter 13 Plan. Accordingly, the Court will sustain the Creditors' Motion to Dismiss.

## FACTS

In September of 1995, the Debtor purchased a day care, the Kids Learning Center, from the Creditors for a purchase price of $175,000.00. The Debtor paid $85,000.00 as a down payment on the day of sale, and executed a Promissory Note for the remaining balance of $90,000.00. To secure the Note, the Creditors took a security interest in all of the assets held by the day care.

The Security Agreement additionally contained a section entitled "Events of Default," in which it enumerated circumstances and conditions that would be deemed "an event of default." Among those items listed was a provision that the Debtor would be deemed to be in default in the event the enrollment at the day care fell below 65 children.

The Debtor was ultimately unsuccessful in her efforts to run the day care, incurring personal debt in connection with that business enterprise and being cited by the Commonwealth of Kentucky for numerous regulatory violations. In 1996, the Creditors filed a civil action in Jefferson Circuit Court seeking to enforce the default provisions of the parties' Agreement, for allowing the enrollment to fall below 65 children. The Creditors, asserting that a default had occurred as a result thereof, called the entire balance due on the Note, and sought by the State Court civil action to collect the amount due. The

Debtor filed a Counterclaim in which she asserted various defenses based on fraud and misrepresentation. The Debtor fully believes that a fraud was committed upon her by the Creditors, and while that claim was fully litigated and decided by the State Court, the Debtor has attempted to rehash her fraud claim several times during the pendency of this bankruptcy action. This Court has refrained from considering that issue, as it has been adjudicated by a final judgment in the Jefferson Circuit Court which found in favor of the Creditors.

During the pendency of the State Court civil action, the Debtor filed for bankruptcy under Chapter 13 of the Bankruptcy Code, on October 3, 1996. Confirmation of Debtor's Chapter 13 Plan was deferred pending the final resolution of the State Court litigation, which did not occur until the following summer, on July 23, 1997. The Jefferson Circuit Court not only rendered Judgment for the Creditors for the full amount of their claims against the Debtor, but also dismissed the Debtor's counterclaims in their entirety. As a result of that Judgment, the Creditors hold a liquidated unsecured claim against the Debtor in the approximate amount of $90,-000.00, plus interest, costs and attorney fees. While they are not the Debtor's only creditors, the claim of these Creditors constitutes well over 60% of the Debtor's outstanding debt.

A final confirmation hearing in the Debtor's Chapter 13 case was subsequently held on October 30, 1997. At that hearing, the Court found from the evidence and testimony that:

(1) Debtor had failed to report an IRA on her schedules, as well as a 401(K) plan valued at approximately $58,000.00;

(2) Not only did Debtor fail to report the IRA, but post-petition cashed the IRA and made certain preferential transfers with the proceeds. Specifically, Debtor testified that she used the proceeds to make payments on various pre-petition debts incurred in connection with the day care, including a payment in excess of $3,000.00 to her mother for money loaned to pay taxes, attorney fees and bank loans;

(3) Debtor's Schedules reflected a monthly expense of approximately $500.00 for *voluntary* contributions to her 401(K) retirement plan;

(4) Debtor's Schedules reflected additional monthly expenses of approximately $400.00 for the graduate school expenses of an adult emancipated daughter; and

(5) Debtor was driving a relatively expensive vehicle. Specifically, the Court remarked:

> ... a reduction from a Lincoln Continental Mark VIII down to a Mercury [Mountaineer] is not a real·great reduction. Both of those cars are, if they were purchased, would be around $40,000.00. She reduced the lease payment from $420.00 down to $380.00 and her testimony was that was the cheapest car that she could buy, or that she could lease.

> Well, obviously she hasn't looked at the newspaper, because there are advertisements for leases in the newspaper every day for $190.00 to 220.00. Now obviously it would not be a $40,000.00 car. It might be an Escort or a Chevy Cavalier or a Dodge Neon. But there are a vast number of cars that could be leased for about half of what she's paying.[1]

Based on these facts, the Court denied confirmation of Debtor's Chapter 13 Plan, stating that it would reconsider confirmation if the Debtor would contribute to the Chapter 13 Plan (1) all of her 401(K) withholding, and (2) all monies the family was paying for the graduate school expenses of the Debtor's daughter. The Court stated:

> If a plan can be filed paying in the amount she contributes to her 401(K) as well as the amount that the family is contributing to the daughter's education, I would consider that very faithfully for confirmation. Anything less than that would be denied.

(Transcript from October 31, 1997 hearing, at p. 11).

---

1. While this Court notes that the lease is actually in Debtor's husband's name, the vehicle is leased for Debtor's use.

The Court further noted that the Debtor had not made any attempts to reduce her lifestyle. The Court then stated, "She's just going to have to reduce her lifestyle some" (Transcript, at p. 14). The Debtor was then given a 20 day extension to file a Plan that complied with the Court's directives. However, rather than complying with the Court's directives to reduce her lifestyle and eliminate the indicated expenses, Debtor chose to convert her Chapter 13 bankruptcy case to a Chapter 7 case.

In response, the Creditors filed the present Motion to Dismiss under § 707(a) for lack of good faith. The Motion came on for hearing on May 11, 1998. Both parties expressly stated on the record their consent to the Court taking into consideration the evidence and testimony presented at the Debtor's October 30, 1997 Chapter 13 Confirmation hearing, in addition to that presented at the § 707(a) hearing.

The Debtor testified that there had been no lifestyle changes since the preceding hearing. Specifically, she testified that she was still making the same voluntary contributions to her 401(K) plan, she was still contributing the same monthly amount to her adult daughter's graduate school education, and she was still driving the Mercury Mountaineer.

The Creditors take the position that the Debtor's actions demonstrate a lack of good faith and an abuse of the Bankruptcy Code protections to the detriment of creditors, thus, justifying dismissal under § 707(a).

### LEGAL DISCUSSION

The Court begins its analysis with a review § 707(a) of the Bankruptcy Code. That Section provides:

(a) The Court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commending such case, the information required by paragraph (1) of section 521, but only on motion of the United States Trustee.

11 U.S.C. § 707(a). Subsections (1), (2), and (3) are not an exclusive list of causes supporting dismissal under § 707(a). *In re Zick*, 931 F.2d 1124, 1126–27 (6th Cir.1991); *In re Spagnolia*, 199 B.R. 362, 363 (Bankr. W.D.Ky.1995); *In re Hammonds*, 139 B.R. 535, 541 (Bankr.D.Colo.1992). The Court may exercise its discretion and dismiss a case on other grounds when "cause" is determined to exist. *Zick*, 931 F.2d at 1127; *Spagnolia*, 199 B.R. at 364.

Numerous courts throughout the United States, including this Court, have held that a debtor's "lack of good faith" in filing a bankruptcy action is implicitly cause for dismissal under § 707(a). *Zick*, 931 F.2d at 1124; *Spagnolia*, 199 B.R. at 365; *In re Barnes*, 158 B.R. 105 (Bankr.W.D.Tenn. 1993); *Hammonds*, 139 B.R. at 535; *In re Johnson*, 137 B.R. 22 (Bankr.E.D.Ky.1991); *In re Jones*, 114 B.R. 917 (Bankr.N.D.Ohio 1990); *In re Khan*, 35 B.R. 718 (Bankr. W.D.Ky.1984). In determining whether a case should be dismissed for lack of good faith under § 707(a), the cases mandate an examination of the totality of the circumstances. *Zick*, 931 F.2d at 1127; *Spagnolia*, 199 B.R. at 365.

In the *Spagnolia* case, this Court recognized that over the years the various courts considering this issue have directed their attention to certain factors considered to be indicia that good faith is lacking. 199 B.R. at 365. In accordance with these various decisions, this Court adopted a set of 14 factors to be considered when deciding whether a § 707(a) dismissal for lack of good faith is warranted. *Id.* The 14 factors are as follows:

1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.

2. The debtor failed to make lifestyle adjustments or continued living an expensive or lavish lifestyle.

3. The debtor filed the case in response to a judgment pending litigation, or collection action; there is an intent to avoid a large single debt.

4. The debtor made no effort to repay his debts.

5. The unfairness of the use of Chapter 7.

6. The debtor has sufficient resource to pay his debts.

7. The debtor is paying debts to insiders.

8. The schedules inflate expenses to disguise financial well-being.

9. The debtor transferred assets.

10. The debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors.

11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.

12. The debtor failed to make a candid and full disclosure.

13. The debts are modest in relation to assets and income.

14. There are multiple bankruptcy filings or other procedural "gymnastics."

*Id.; See also Zick,* 931 F.2d at 1124; *In re Brown,* 88 B.R. 280, 283–84 (Bankr.D.Hawai'i 1988); *In re Barnes,* 158 B.R. at 105; *Hammonds,* 139 B.R. at 535; *In re Cappuccetti,* 172 B.R. 37 (Bankr.E.D.Ark.1994).

■ As we noted in the *Spagnolia* case, generally the presence of only one of these factors is not sufficient to support a § 707(a) dismissal. *Spagnolia,* 199 B.R. at 365. However, where a combination of these factors are present, a § 707(a) dismissal is warranted. *Id.; See also Zick,* 931 F.2d at 1124; *In re Brown,* 88 B.R. at 280.

In applying the factors set forth above to the instant case, it is evident to the Court that factors 2, 3, 5, 6, 7, 9, 10, 11, 12 and 14 are present.

At the outset, the Court additionally notes with regard to factor 1, that while the Debtor has other creditors, they are individually insignificant in amount and nature. In comparison, these Creditors hold a liquidated unsecured claim against the Debtor in the approximate amount of $90,000.00, plus interest, costs and attorney fees, and constitute well over 60% of the outstanding debt. The Debtor filed her initial Chapter 13 Petition during the pendency of the Creditor's State Court action, and it is clear from the record as well as the facts set forth above, that the bankruptcy was filed in response to this particular claim.

The most significant factor involved in this particular case, however, is factor 2. As this Court noted at the October 30, 1997 hearing, the Debtor's Schedules reflected a monthly expense of approximately $500.00 for *voluntary* contributions to her 401(K) retirement plan, and approximately $400.00 for the graduate school expenses of an adult, emancipated daughter. Additionally, the Court found that the Debtor was driving a leased Mercury Mountaineer, a $40,000.00 car with an unnecessarily high monthly lease payment of $380.00. The Court noted at that earlier hearing that there are a vast number of cars that could be leased for about half that amount. Based on those specific facts the Court denied Confirmation of the Debtor's Chapter 13 Plan, for failure to pay all of her disposable income into the Plan. The Court stated at that hearing that it would reconsider confirmation if she could file a Plan pursuant to which she would contribute all of her 401(K) withholding, as well as the amount that the family is contributing to the adult daughter's graduate school education. The Court then gave the Debtor a 20–day extension in which to file such a Plan, emphatically stating that "She's just going to have to reduce her lifestyle some" (Transcript, at p. 14).

Despite the Court's admonishment, the Debtor opted not to make any lifestyle adjustments at all. Rather, the Debtor decided to simply convert her Chapter 13 bankruptcy case to a case under Chapter 7 in the hopes of avoiding any reduction in her lifestyle or elimination of unnecessary expenses. The Court specifically notes that the Debtor testified at the May 11, 1998 hearing that there had been no lifestyle changes whatsoever since the preceding October 1997 hearing. The Debtor was still making the same voluntary monthly contributions in the approximate amount of $500.00 to her 401(K), was still paying monthly expenses of approxi-

mately $400.00 for her daughter's graduate school education, and was still driving the Mercury Mountaineer. Thus, it is clear that the Debtor has failed to make lifestyle changes that could support a finding of good faith.

These same facts additionally support a finding of factor 5 (the unfairness of the use of Chapter 7), factor 10 (debtor's over-utilization of the protections of the Code to the unconscionable detriment of creditors), and factor 14 (the debtor has engaged in procedural gymnastics). Rather, than follow the Court's directive to reduce her lifestyle in order to devote all disposable income to a Chapter 13 Plan, the Debtor simply attempted to sidestep the Court's instructions by engaging in a procedural game of musical chairs; that is, switching to Chapter 7 in an effort to avoid making a lifestyle adjustment. The Court finds that this is not an appropriate use of Chapter 7.

It is also apparent that factors 3 (Debtor filed for bankruptcy in response to pending litigation), and 11 (Debtor employed a deliberate and persistent pattern of evading a single major creditor) are present in this case. The Court finds from the evidence and testimony presented at both hearings that the claim of these Creditors was the largest contributing factor to the Debtor's bankruptcy. Debtor filed her Chapter 13 bankruptcy on October 3, 1996, during the pendency of the Creditors' Jefferson Circuit Court civil action against her, filed previously the same year. The Debtor testified that at the time of the bankruptcy, she had incurred a large personal expense in connection with the day care, had incurred significant legal expenses in connection with the State Court civil action, and had defaulted on her monthly payments on the day care. Most significant, however, was the impending prospect of having a judgment rendered against her.

The Debtor filed the Chapter 13 case nine months before a final judgment was rendered by the State Court, and was able to defer confirmation of her Chapter 13 Plan throughout that duration. Thus, she was able to defer her financial obligations to the Creditors by this process. On July 23, 1997, the Jefferson Circuit Court rendered a Judgment for the Creditors for the full amount of their claims against the Debtor, in the approximate amount of $90,000.00, plus interest, costs and attorney fees. Their claims constitute well over 60% of the Debtor's outstanding debt. Thus, it is clear that the debt owed to the Creditors was the most significant contributing factor to the Debtor's bankruptcy. Furthermore, the timing of the Debtor's bankruptcy, during the pendency of the Creditors' State Court action against the Debtor, further supports this finding.

With regard to factor 6 (the debtor has sufficient resources to pay her debts), the Court finds that the Debtor has substantial income and assets which are available to pay and satisfy her unsecured obligations. The Debtor has a stable employment history, having worked for the past 28 years in her present employment with Ford Motor Company. The Debtor testified at the May 11, 1998 hearing that her yearly gross income is approximately $45,000.00, and while she professed to have no knowledge regarding her husband's gross annual income,[2] estimated that it is close in amount to hers. In addition, the Debtor participates in a profit sharing plan through her employment that has often in the past generated several thousand dollars a year in additional income. Accordingly, the Debtor's household income is in excess of $90,000.00 a year. This amount will likely increase in the future, as the Debtor receives periodic raises.

In addition, the Debtor testified that her retirement accounts are worth approximately $58,000.00, and she continues to voluntarily contribute to her 401(K). As stated above, she has sufficient income to contribute to her daughter's graduate school expenses in the approximate amount of $400.00 a month. The Debtor's Schedules also reflect significant equity in her home. Thus, it is clear that the Debtor does possess sufficient resource to pay her debts.

The Court additionally finds that factor 7 (debtor has paid debts to insiders), factor 9

---

2. The Court finds it rather incredulous that the Debtor, who a has degree, as well as work experience, in the field of accounting, could be unknowledgeable regarding her husband's income.

(debtor transferred assets), and factor 12 (debtor failed to make a candid and full disclosure) are present in this case. Despite the Debtor's familiarity with accounting and financial matters, she filed inaccurate Schedules and amendments thereto in the course of her Chapter 13 case. Specifically, she failed to report an IRA on her Schedules, as well as one of her 401(K) plans. She additionally engaged in a sale of certain real estate during the pendency of the Chapter 13 with court approval, but failed to list or notify the Court by motion, or in her Petition or Schedules, of the existence of other real property which she retained following the sale. Lastly, in completing her Schedules, the Debtor failed to bifurcate her assets and debts from her husband's, thus, creating an inaccurate picture of her financial circumstances.

The Debtor furthermore liquidated assets and made preferential payments to undisclosed creditors, including at least one insider, the Debtor's mother. Not only did the Debtor fail to disclose her IRA, but postpetition she cashed the IRA and made preferential transfers with the proceeds. Specifically, she testified at the May 11, 1998 hearing that she used the proceeds to make payment on various pre-petition debts incurred in connection with the day care. One of these payments was to her mother and was in excess of $3,000.00. She made that payment to reimburse her mother for money loaned to pay taxes, attorney fees and bank loans.

The Court finds from the combination and totality of these facts that the Debtor has not demonstrated good faith in filing for protection under the Bankruptcy Code. To the contrary, the facts set forth above firmly support a finding that there has been a lack of good faith, warranting dismissal of the Debtor's bankruptcy case under § 707(a).

## CONCLUSION

For the above-stated reasons, this Court by separate Order sustains the Motion of the Creditors, Donna Fryman and Pizazz Enterprises, Inc., to Dismiss pursuant to 11 U.S.C. § 707(a).