**In re Tanh KEOBAPHA, Debtor.**

**Stuart Deglin, Judith Deglin, & Stuart Deglin, Administrator of the Estates of Samantha A. Deglin & Randy Deglin, Movants,**

v.

**Tahn Keobapha, Respondent.**

**No. 00–22046.**

United States Bankruptcy Court, D. Connecticut.

May 22, 2002.

Joel M. Grafstein, Esq., Farmington, CT, for Movants.

Mary Ann Santacroce, Esq., O'Connell, Flaherty & Attmore, LLC, Hartford, CT, for Respondent.

### RULING ON CREDITORS' MOTION TO DISMISS CHAPTER 7 DEBTOR'S CASE

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

#### Issue

Tanh Keobapha ("the debtor") filed a Chapter 7 petition on July 24, 2000. No objection to discharge from debt was filed and the court granted the debtor a discharge on February 22, 2001. The matter before the court arises from a motion filed on December 5, 2000, by Stuart Deglin, Judith Deglin, and Stuart Deglin, as Administrator of the Estates of Samantha A. Deglin and Randy Deglin (together "the movants"), in which, allegedly pursuant to Bankruptcy Code §§ 707(a), 349(a) and 105(a), the movants request that the debtor's case, as a bad faith filing, be dismissed with prejudice, that he be prohibited from filing a new petition for a period of 180 days following the dismissal of his case, and that the debts that would have been discharged in this case be barred from discharge in any later case.

The debtor, on January 3, 2001, filed an objection to the motion denying cause existed for such dismissal. A hearing on the motion concluded on April 10, 2002, following which the debtor submitted an additional memorandum of law. The only witnesses were the debtor and his wife. The movants rely on the following background elicited at the hearing to support the granting of their motion.

### II.

#### Background

#### A.

The debtor, while operating his motor vehicle on January 9, 1997, in a tragic accident, struck and thereby caused the deaths of Samantha A. Deglin and Randy Deglin, the children of Stuart Deglin and Judith Deglin. The movants, on May 7, 1998, filed a wrongful death action in the Connecticut Superior Court against the debtor. Prior to trial, the debtor filed his bankruptcy petition. The debtor's insurance company provided and paid for the services of the debtor's bankruptcy attorney. The parties, in their memoranda, concur that the debtor's insurance company has offered to settle the movants' state-court action by paying to the movants the insurance policy limits, but that the movants rejected the offer since it required the movants to release all claims against the debtor.

The debtor is a native of Laos, with a very limited ability to speak and understand English. Receiving his testimony at trial required the utilization of an interpreter. For the past six years the debtor has been employed by a local company as a set-up man, where he presently earns about $400 a week. His bankruptcy schedules list as assets, all claimed as exempt, a one-half interest in a 1991 Toyota automobile; household goods, furnishings, and wearing apparel with a total value of $1200; and a $464.65 interest in a 401K Plan. The schedules do not show any prepetition transfer of assets by the debtor.

The debtor is married, but is separated from his wife who presently lives with her sister. Two adult children live with the debtor in his apartment, but neither is employed. His wife occasionally assists the debtor by paying for groceries. The debtor does not own cable television or have a telephone. For recreation, friends

sporadically take him to Connecticut gambling casinos. A deposition taken of the debtor's wife was entered into evidence. Her testimony, also requiring the assistance of an interpreter, essentially confirmed that of the debtor as to his finances and family circumstances.

### B.

The movants contend that the debtor filed his bankruptcy petition in bad faith and, therefore, the court has cause pursuant to § 707(a) to dismiss the debtor's case. Specifically, the movants note: the debtor has essentially only one creditor; the debtor filed his case solely in response to a potential judgment in the movants' wrongful death action against him; the debtor's use of Chapter 7 is unfair to the movants; the debtor has sufficient income to pay some debt; and the debtor is over-utilizing the protection of the Bankruptcy Code to the unconscionable detriment of the movants.

### III.

### Discussion

### A.

Section 707(a) provides:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

The legislative history for this section "specifically notes that these causes are not exhaustive, but merely illustrative." (Internal quotation marks omitted.) *In re Peklo,* 201 B.R. 331, 333 (Bankr.D.Conn. 1996); H.R.Rep. No. 95–595 at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336.

 "The decision whether to grant or deny a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge … [and in establishing cause], 'the Bankruptcy Court must balance the equities and consider the benefits and prejudice of dismissal.' " *In re Marra,* 179 B.R. 782, 785 (M.D.Pa.1995).

The debtor initially questions whether bad faith is included within § 707(a) "cause." Although the Second Circuit has yet to rule on this issue, the Third and Sixth Circuits have held that lack of good faith is a valid basis in dismissing a Chapter 7 case "for cause." *See Tamecki v. Frank (In re Tamecki),* 229 F.3d 205, 207 (3rd Cir.2000) ("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing."); *Industrial Insurance Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1127 (6th Cir.1991) (same); *but see Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1191 (9th Cir.2000) ("[B]ad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)"); *Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829, 832 (8th Cir.1994) (declining to adopt a *per se* bad faith standard, but acknowledging that "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith"). The court, for the purposes of this proceeding, will assume that lack of good faith is subsumed within the "for cause" provision of § 707(a). *See Blumenberg v. Yihye (In re Blumenberg),* 263 B.R. 704, 714 (Bankr.

E.D.N.Y.2001) ("[D]ismissal for bad faith Chapter 7 filings are justified under section 707(a)."); *In re Griffieth*, 209 B.R. 823, 827 (Bankr.N.D.N.Y.1996) (same).

■ The determination of whether a debtor has acted in bad faith must be done on a case by case basis and courts have outlined various factors to consider in this analysis. For example, there are those courts that favor adoption of a bad faith test, but only in the face of egregious debtor actions. Here, "bad faith in the filing of a Chapter 7 petition would be evidenced by a pervasive and orchestrated effort on the part of the debtor to obtain the benefits of a bankruptcy filing while at the same time intentionally and fraudulently taking action to avoid any of the detriments." *In re Khan*, 172 B.R. 613, 625 (Bankr.D.Minn.1994). These actions may include "manifest dishonesty toward a legal tribunal" such as:

> [S]ystematic and deliberate misstatements or omissions on bankruptcy schedules; knowingly false testimony at a meeting of creditors or a court hearing; and intentional acts to hinder the trustee in the administration of the estate and the investigation in connection with it. To taint the whole filing, there should be something more than an isolated instance or two of such conduct.

*Id.* at 625 fn. 23. In addition, dismissal for bad faith may "be prompted by a vindictive motivation to use bankruptcy solely as a 'scorched-earth' tactic against a pressing creditor or opponent in litigation." *Id.* at 625; *see also Huckfeldt*, 39 F.3d at 832; *In re Motaharnia*, 215 B.R. 63, 68 (Bankr. C.D.Cal.1997).

Other courts have adopted the "smell test" in determining whether the debtor had acted in bad faith. This involves the weighing of such factors as:

> (1) the debtor reduced his creditors to a single creditor in the months prior to filing his petition; (2) the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle; (3) the debtor filed the case in response to a judgment pending litigation ...; (4) the debtor made no effort to repay his debts; (5) the unfairness of the use of Chapter 7; (6) the debtor has sufficient resources to pay his debts; (7) the debtor is paying debts to insiders; (8) the schedules inflate expenses to disguise financial well-being; (9) the debtor transferred assets; (10) the debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors; (11) the debtor employed a deliberate and persistent pattern of evading a single major creditor; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to assets and income; and (14) there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D.Ky.1995); *see also Zick*, 931 F.2d at 1128. "Generally, the presence of only one of these factors is not sufficient to support a § 707(a) dismissal." *Spagnolia*, 199 B.R. at 365.

### B.

■ There is no evidence that the debtor in his bankruptcy case engaged in any egregious behavior, such as misleading the court, misrepresenting his financial situation or hampering the trustee's management of the estate. The movants argue, however, that the debtor's actions represent a combination of factors outlined in the "smell test," adopted by *Zick*, showing that he filed his petition in bad faith. The movants assert that the debtor is seeking to avoid one creditor in response to a potential judgment against him and the debtor has made no attempt to repay his creditor. The movants assert that the

debtor's use of the Bankruptcy Code would be an unconscionable detriment to his creditor.

The court finds that, while the debtor essentially does only have one creditor (treating the Deglin family as a single creditor), he did not manipulate his financial situation to reduce his creditors to a single creditor in the months prior to filing his petition. The debtor does not live a lavish lifestyle and made no pre-petition transfers of assets. In fact, the evidence indicates the debtor can barely make ends meet with his meager income and providing a home for his two grown children. While the debtor's petition was in response to the pending wrongful death lawsuit, that alone is not cause for dismissal under § 707(a).

In short, this court notes that, unlike the present proceeding, the cases the movants cite where courts have found bad faith typically involved facts where the debtor hid assets from the court, the debtor continued to live a lavish lifestyle, and whose actions hindered the settlement of outstanding claims. *See Zick,* 931 F.2d at 1128 (dismissing case because debtor manipulations reduced his creditors down to one, and debtor filed bankruptcy to avoid paying a mediation award); *Blumenberg,* 263 B.R. at 715 (finding abuse of the bankruptcy system when the debtor admitted he never had any intention to reorganize when he filed his Chapter 11 petition and only filed to attack a final state-court judgment); *Griffieth,* 209 B.R. at 827 (finding bad faith where the debtors continued to live a lavish lifestyle, reaffirmed all their property, automobile and credit debts, and sought only to discharge their debt to the Internal Revenue Service for self-created tax avoidance); *In re Brown,* 88 B.R. 280, 284 (Bankr.D.Hawai'i 1988) (finding lack of good faith where pre-petition the debtor

transferred all of his assets in order to keep his creditors from reaching them).

### C.

In filing their motion, the movants' memoranda place emphasis on the debtor's potential future income and how much might constitute disposable income available to his creditors. Various courts have considered future ability to pay as a factor in determining the issue of bad faith. *See Merritt v. Franklin Bank (In re Merritt),* No. 98–2399, 2000 WL 420681, at *3 (6th Cir. April 12, 2000) (stating that future ability to pay debts by itself may not be cause to dismiss a case pursuant to § 707(a), but it is a relevant inquiry into whether the petition was filed in bad faith); *Spagnolia,* 199 B.R. at 366; *Brown,* 88 B.R. at 284; *In re Khan,* 35 B.R. 718, 719–20 (Bankr.W.D.Ky.1984).

■ This court disagrees and finds that a debtor's ability to pay in the future is not a factor a court should consider in a motion to dismiss pursuant to § 707(a). It is only a consideration of "substantial abuse" pursuant to § 707(b). "[T]he question of whether a Chapter 7 debtor could meet dischargeable debt obligations in whole or part from future resources is irrelevant to a motion under § 707(a)." *Khan,* 172 B.R. at 622. This is explicitly apparent from the legislative history of the original enactment of § 707(a), which states:

> [11 U.S.C. § 707(a)] does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.

H.R.Rep. No. 95–595 at 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6336; S.Rep. No. 95–989 at 94 (1978), U.S.Code Cong. & Admin.News 1978, pp.

54

5787, 5880; *see also Motaharnia*, 215 B.R. at 68 (stating that Congress never intended for courts to consider a debtor's ability to pay part or all of its debts when considering "cause" under § 707(a)); *Huckfeldt*, 39 F.3d at 831 (noting that the "[a]bility to pay is the primary inquiry under § 707(b)," not § 707(a)); *In re Goulding*, 79 B.R. 874, 876 (Bankr.W.D.Mo.1987) ("It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal.").

 The movants also request this court to use the substantial abuse test, as used in § 707(b), because the debtor has the ability to pay all or some of his debt to the movants. Substantial abuse is solely a § 707(b) test and does not apply to § 707(a) motions. Section 707(b) provides in relevant part:

> [T]he court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

In addition, the substantial abuse test under § 707(b) can only be used for cases where there is primarily consumer debt. In the present case, the only debt at issue is not consumer debt, but a judgment debt.

> Section 707(a) is quite broad in that it permits dismissal for cause ... [and] is geared toward maintaining the integrity of the bankruptcy process. In contrast, § 707(b) was created to provide the court with a tool to prevent the discharge of debt owed by non-needy consumer debtors and to deal equitably

when an unscrupulous consumer attempts to use the bankruptcy court as part of a scheme to take unfair advantage of his creditors.

*Motaharnia*, 215 B.R. at 67.

Alternatively, even if this court chose to consider the debtor's ability to pay his debt, the evidence indicates that the debtor does not have the means to pay his substantial debt to the movants, which, potentially, is in the range of many millions of dollars. As previously discussed, the debtor earns a modest income and any "disposable income" he may have at the end of the day is scant at best. This is contrary to those cases described *supra*, where the debtor was making or capable of making substantial income and therefore, able to pay their debt. *See Zick*, 931 F.2d at 1128 (finding that debtor received $7,000 a month in income plus pension plan benefits); *Griffieth*, 209 B.R. at 827 (noting how the debtors receive $14,168.48 a month in after-tax income); *Spagnolia*, 199 B.R. at 366 (finding that the debtor had a joint net monthly income of $17,000); *Khan*, 35 B.R. at 720 (finding that the debtor was capable of making over $200,000 a year).

IV.

*Conclusion*

For the foregoing reasons, the court concludes that the movants have not carried their burden of establishing cause to dismiss the debtor's case pursuant to § 707(a).[1] The motion to dismiss is hereby denied. It is

SO ORDERED

---

1. In light of the movants' pending proceeding to revoke the debtor's discharge based on

their contention that the discharge should not have entered while their motion to dismiss was pending, the court's ruling does not rely on the fact that the debtor has received his discharge. As the parties are aware, it has been prior court policy not to dismiss Chapter 7 cases, whether on a creditor's or a debtor's motion, once a discharge has been granted to the debtor.